# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Ramos,                                    :
                          Petitioner                 :
                                                     :
         v.                                          :    No. 582 C.D. 2019
                                                     :    Submitted:  November 8, 2019
Pennsylvania Board of                                :
Probation and Parole,                                :
                          Respondent                 :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                      **FILED:  January 23, 2020**


         Petitioner Michael A. Ramos (Ramos) petitions for review of a final
determination of the Pennsylvania Board of Probation and Parole (Board), dated
April 16, 2019, which denied Ramos's request for administrative relief, challenging,
*inter alia*, the Board's recalculation of his maximum sentence date.  Ramos's
counsel, Kent D. Watkins, Esquire (Counsel), filed a motion to withdraw as counsel.
Counsel asserts, as expressed in his "no-merit" letter, that the issues Ramos raises in
his petition for review are without merit.  We now grant Counsel's motion to
withdraw as Counsel and affirm the Board's final determination.

         Ramos had been incarcerated at a state correctional institution when the
Board granted him parole by notice dated March 20, 2014.  (Certified Record (C.R.)

at 7.) Ramos was released from confinement on June 16, 2014. (*Id.*) At the time of his parole, the Board calculated Ramos's maximum sentence date as September 12, 2019. (*Id.* at 1.)

On May 27, 2015, the Upper Providence Police Department (Police Department) filed a criminal complaint against Ramos for four counts of invasion of privacy. (*Id.* at 12.) That same day, the Board issued a warrant to commit and detain Ramos. (*Id.* at 23.) On May 28, 2015, the Police Department arrested Ramos on the four counts of invasion of privacy. (*Id.* at 27.) On June 30, 2015, the Police Department later updated the criminal complaint on which they arrested Ramos to include the charges of, *inter alia*, sexual abuse of children and possession of child pornography. (*Id.* at 33-37.) On December 8, 2016, Ramos entered into a plea agreement in which he pled guilty to one count of invasion of privacy in violation of 18 Pa. C.S. § 7507.1(A)(1) (count one), two counts of sexual abuse of children (photographing, filming, or depicting on computer sex acts) in violation of 18 Pa. C.S. § 6312(b)(2) (counts six and seven), one count of sexual abuse of children (child pornography) in violation of 18 Pa. C.S. § 6312(d) (count fifteen) in exchange for the District Attorney's agreement to *nolle pros* the remaining charges. (*Id.* at 125-130.) On count six, the Court of Common Pleas of Montgomery County (trial court) sentenced Ramos to a period of three and a half to ten years' confinement[1] and, on count seven, sentenced him to a maximum of five years' probation to be served consecutively to count six. (*Id.*) Thereafter, Ramos requested a revocation hearing before the Board and was represented by counsel at that hearing. (*Id.* at 95, 104-118.) By Board action recorded May 17, 2017, the Board recommitted

_____

[1] On count one, the trial court sentenced Ramos to one to two years' confinement to be served concurrently with count six, and, on count fifteen, the trial court sentenced Ramos to "3.7" years' confinement to be served concurrently with count six. (C.R. at 103.)

2

Ramos as a convicted parole violator to serve 24 months' backtime. (*Id*. at 156-57.) In so doing, the Board recalculated Ramos's maximum sentence date to May 29, 2022. (*Id*. at 156.)

Ramos then filed a request for administrative relief, challenging the Board's recalculation of his maximum sentence date and the Board's alleged failure to provide credit for time spent at liberty while on parole. (*Id*. at 158.) The Board denied Ramos's administrative appeal, reasoning:

> The Board recalculated your maximum sentence date to May 29, 2022, based on your recommitment as a convicted parole violator. The decision to recommit you as a convicted parole violator gave the Board statutory authority to recalculate your sentence to reflect that you received no credit for the period you were at liberty on parole. The Board denied you credit for time at liberty on parole in this instance. The Board advised you of this potential penalty on the parole conditions you signed on June 13, 2014. You also had constructive notice of this potential penalty via the statute. Additionally, the ability to challenge the recalculation decision after it is imposed satisfies your due process rights. Therefore, the Board's recalculation of your maximum sentence date did not violate any constitutional provisions, including double jeopardy.
>
> The Board paroled you from a state correctional institution on June 16, 2014[,] with a max sentence date of September 12, 2019. This means you had a total of 1,914 days remaining on your sentence at the time of parole. In light of your recommitment as a convicted parole violator, the Board was authorized to recalculate your sentence to reflect that you received no credit for the period you were at liberty on parole. The Board did not grant you credit for time at liberty on parole in this case. This means you still had 1,914 days remaining on your sentence based on your recommitment.
>
> On May 27, 2015, you were detained by the Board. On May 28, 2015, authorities detained you for new criminal charges at docket number CP# 5015-2015 in the

3

Court of Common Pleas of Montgomery County. The court set monetary bail. You did not post bail nor do you allege that you posted bail. You pled guilty to the new criminal charges on December 8, 2016[,] and the court sentenced you to a term of imprisonment to be served in [a state correctional institution] that same day.

Based on these facts, the Board gave you 1 day of credit for the period you were confined from May 27, 2015[,] to May 28, 2015, because you were confined solely on the Board detainer. However, the Board did not give you any credit for the period you were incarcerated from May 28, 2015[,] to March 3, 2017, because you were incarcerated on both the Board detainer and the new criminal charges, or solely the new criminal charges during that period. As such, this time will be applied to your new sentence when it is calculated. Thus, you had a total of 1,913 days remaining on your original sentence.

The Prisons and Parole Code[2] provides that convicted parole violators who are paroled from a state correctional institution and then receive another sentence to be served in a state correctional institution must serve the original sentence first. However, that provision does not take effect until the parolee is recommitted as a convicted parole violator. Thus, you did not become available to commence service of your original sentence until March 3, 2017[,] because that is when the Board voted to recommit you as a parole violator. Adding 1,913 days to that date yields a new maximum sentence date of May 29, 2022.

Finally, the decision on whether to grant or deny a convicted parole violator credit for time at liberty on parole is purely a matter of discretion. The Prisons and Parole Code authorizes the Board to grant or deny credit for time at liberty on parole for certain criminal offenses. To the extent that you claim the Board abused its discretion by not having an adequate reason to deny you credit for the time you spent at liberty on parole, this claim is denied. You were found guilty of an offense that is

---

[2] 61 Pa. C.S. §§ 101-7123.

4

prohibited from receiving credit. Specifically, you pled guilty to Photograph/Film/Depict on Computer Sex Act, which is a crime that requires Megan's Law Registration, [and] is prohibit[ed] from receiving credit pursuant to 61 Pa. C.S. § 6138(a)(2.l)(i). However, as a courtesy, on April 9, 2019, the Board mailed you a new [B]oard action providing that you were denied credit because your conviction was sexual in nature.

(C.R. at 167-68 (citations omitted).) Ramos then filed a petition for review in this Court.

We begin by addressing Counsel's request to withdraw from representation of Ramos. When no constitutional right to counsel is involved in a probation and parole case, an attorney seeking to withdraw from representing a prisoner may file a no-merit letter, as compared to an *Anders* brief.[3] In *Hughes v. Pennsylvania Board of Probation and Parole*, 977 A.2d 19 (Pa. Cmwlth. 2009) (en banc), this Court held that a constitutional right to counsel in a probation and parole matter arises only when the prisoner's case includes:

[a] colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of

_____

[3] In *Anders v. California*, 386 U.S. 738 (1967), the Supreme Court of the United States held that in order for a criminal defendant's counsel to withdraw from representing his client in an appeal, the counsel must assert that the case is completely frivolous, as compared to presenting an absence of merit. An appeal is completely or "wholly" frivolous when there are no factual or legal justifications that support the appeal. *Craig v. Pa. Bd. of Prob. & Parole*, 502 A.2d 758, 761 (Pa. Cmwlth. 1985). In seeking to withdraw, counsel must submit a petition to withdraw and a brief "referring to anything in the record that might arguably support the appeal." *Cmwlth. v. Baker*, 239 A.2d 201, 202 (Pa. 1968) (quoting *Anders*, 386 U.S. at 744). The Supreme Court of Pennsylvania, however, has held that in matters that are *collateral* to an underlying criminal proceeding, such as parole matters, counsel seeking to withdraw from his representation of a client may file a "no-merit" letter that includes information describing the extent and nature of the counsel's review, listing the issues the client wants to raise, and informing the Court of the reasons why counsel believes the issues have no merit. *Cmwlth. v. Turner*, 544 A.2d 927, 928-29 (Pa. 1988).

5

> public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Hughes*, 977 A.2d at 25-26 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)). The record in this matter contains no suggestion by Ramos that he did not commit the underlying crimes of his new criminal conviction, nor does he suggest reasons constituting justification or mitigation for his new criminal conviction. Thus, Ramos only has a statutory right to counsel under Section 6(a)(10) of the Public Defender Act.[4]

In order to satisfy the procedural requirements associated with no-merit letters, counsel must: (1) notify the parolee that he has submitted to the Court a request to withdraw; (2) provide the parolee with a copy of counsel's no-merit letter; and (3) advise the parolee that he has the right to obtain new counsel and to submit to the Court a brief of his own, raising any arguments that he may believe are meritorious.[5] *Reavis v. Pa. Bd. of Prob. & Parole*, 909 A.2d 28, 33 (Pa. Cmwlth. 2006). In seeking to withdraw, this Court has consistently required an attorney to include the following descriptive information in a no-merit letter: (1) the nature and extent of counsel's review of the case; (2) the issues the parolee wants to raise; and (3) the analysis counsel used in reaching his conclusion that the issues are meritless. *Zerby v. Shanon*, 964 A.2d 956, 961 (Pa. Cmwlth. 2009). Before evaluating the merits of Ramos's challenge, we must first evaluate Counsel's

---

[4] Act of December 2, 1968, P.L. 1144, *as amended*, 16 P.S. § 9960.6(a)(10).

[5] Counsel served Ramos with his motion for leave to withdraw and his no-merit letter. In the no-merit letter, Counsel advised Ramos of his right to retain counsel and to file a brief on his own behalf. Thus, Counsel has complied with these requirements.

6

no-merit letter to determine whether it complies with the requirements for withdrawal applications.

In his petition for review, Ramos alleges that the Board abused its discretion in failing to credit his sentence for the time he was held on the Board's detainer and at liberty on parole. Counsel's no-merit letter adequately describes his review of the case, identifies all issues raised in the petition for review, and sets forth the analysis Counsel used in reaching his conclusion that the issues are without merit. Counsel's no-merit letter, therefore, meets the requirements set forth in *Zerby*, and we will proceed to consider whether Counsel is correct in asserting that Ramos's appeal has no merit.

Ramos argues that the Board abused its discretion in failing to credit his sentence for the time he spent at liberty on parole. Section 6138(a) of the Prisons and Parole Code, 61 Pa. C.S. § 6138(a), gives the Board discretion to award credit for the time spent at liberty on parole.[6] Section 6138(a)(2.1) of the Prisons and Parole Code provides, in relevant part:

---

[6] Section 6138(a) of the Prisons and Parole Code provides, in part:

**(a) Convicted violators.--**

> (1) *A parolee under the jurisdiction of the board released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment*, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record, *may at the discretion of the board be recommitted as a parole violator.*

> (2) *If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.*

7

(2.1) *The board may, in its discretion, award credit to a parolee recommitted* under paragraph (2) for the time spent at liberty on parole, *unless any of the following apply*:

(i) *The crime committed during the period of parole or while delinquent on parole is* a crime of violence as defined in 42 Pa. C.S. § 9714(g) (relating to sentences for second and subsequent offenses) or *a crime requiring registration under 42 Pa. C.S. Ch. 97 Subch. H (relating to registration of sexual offenders)*.

(Emphasis added.)  The statutory provisions referred to relating to registration of sexual offenders are set forth in Pennsylvania's most recent Sex Offender Registration and Notification Act (SORNA II).[7]

---

(Emphasis added.)

[7] In *Dougherty v. Pennsylvania State Police*, 138 A.3d 152 (Pa. Cmwlth. 2016) (en banc), we explained the history of sex offender registration statues in Pennsylvania, including SORNA II, as follows:

Courts have . . .  referred to [Pennsylvania's Sex Offender Registration and Notification Act (SORNA)] as the Adam Walsh Act.  SORNA is the General Assembly's fourth enactment of the law commonly referred to as Megan's Law. Megan's Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, and became effective 180 days thereafter.  Megan's Law II was enacted on May 10, 2000[,] in response to Megan's Law I being ruled unconstitutional by our Supreme Court in *Commonwealth v. Williams*, . . . 733 A.2d 593 ([Pa.] 1999).  Our Supreme Court held that some portions of Megan's Law II were unconstitutional in *Commonwealth v. [Williams]*, . . . 832 A.2d 962 ([Pa.] 2003), and the General Assembly responded by enacting Megan's Law III on November 24, 2004.  The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901-16945, and the Pennsylvania General Assembly responded by passing SORNA on December 20, 2011[,] with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006."  42 Pa. C.S. § 9799.10(1). SORNA went into effect a year later on December 20, 2012.  Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution.  *[Cmwlth.] v. Neiman*, . . .

Here, the trial court convicted Ramos of sexual abuse of children (photographing, filming, or depicting on computer sex acts) in violation of 18 Pa. C.S. § 6312(b)(2)[8] and sexual abuse of children (child pornography) in violation of 18 Pa. C.S. § 6312(d),[9] both of which are crimes requiring registration. Pursuant to Section 6138(a)(2.1)(i) of the Prisons and Parole Code, the Board could not award Ramos credit for time spent at liberty on parole. Accordingly, the Board did not abuse its discretion by not crediting Ramos's sentence for the time he spent at liberty on parole.

Ramos also contends that the Board abused its discretion by failing to credit his sentence for the time he spent detained solely on the Board's detainer. Our Supreme Court, in *Gaito v. Pennsylvania Board of Probation and Parole*, 412 A.2d 568, 571 (Pa. 1980), held that where an offender "is being held in custody *solely because of a detainer lodged by the Board* and has otherwise met the requirements for bail on the new criminal charges, the time which he spent in custody shall be credited against his original sentence." The Board lodged a detainer against

---

84 A.3d 603, 616 ([Pa.] 2013). However, by the time it was struck down, Megan's Law III had been replaced by SORNA.

*Dougherty*, 138 A.3d at 155 n.8.

Thereafter, by decision and order dated July 19, 2017, our Supreme Court declared SORNA unconstitutional in *Commonwealth v. Muniz*, 164 A.3d 1189, 1193 (Pa. 2017), *cert. denied*, ___ U.S.___, 138 S. Ct. 925 (2018). The General Assembly initially responded by enacting the Act of February 21, 2018, P.L. 27 (Act 10). Shortly thereafter, the General Assembly reenacted and amended various provisions of Act 10 by the Act of June 12, 2018, P.L. 140 (Act 29). The statutory provisions of Acts 10 and 29 are set forth at 42 Pa. C.S. §§ 9799.10-.75, and our reference to SORNA II herein refers to those statutory provisions.

[8] A violation of 18 Pa. C.S. § 6312(b)(2) is classified as a Tier II sexual offense requiring registration under SORNA II. 42 Pa. C.S. § 9799.14(c)(4).

[9] A violation of 18 Pa. C.S. § 6312(d) is a Tier I sexual offense requiring registration under SORNA II. 42 Pa. C.S. § 9799.14(b)(9).

9

Ramos on May 27, 2015, and the following day—May 28, 2015—the Police Department arrested Ramos on new criminal charges. As Ramos spent one day detained solely on the Board's detainer, the Board correctly gave Ramos credit to his sentence for that one day. Accordingly, the Board did not fail to credit Ramos's sentence for the time he spent detained solely on the Board's detainer and did not, therefore, abuse its discretion.

Based on the above discussion, we agree with Counsel that Ramos's challenges raised in his petition for review lack merit. We, therefore, grant Counsel's motion to withdraw and affirm the order of the Board.

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Ramos,                        :
                    Petitioner          :
                                        :
        v.                              :        No. 582 C.D. 2019
                                        :
Pennsylvania Board of                   :
Probation and Parole,                   :
                    Respondent          :

# **O R D E R**


        AND NOW, this 23rd day of January, 2020, the motion to withdraw as counsel filed by Kent D. Watkins, Esquire, is GRANTED and the order of the Pennsylvania Board of Probation and Parole is AFFIRMED.


                                    _____
                                    P. KEVIN BROBSON, Judge