Johnnie X. Stroud,            :
              Petitioner      :
                           :
          v.                 :
                           :
Pennsylvania Board of       :
Probation and Parole,        :    No. 1241 C.D. 2017
            Respondent    :    Submitted: July 20, 2018


BEFORE:    HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE COVEY                           FILED: October 22, 2018

       Johnnie X. Stroud (Stroud) petitions this Court for review of the Pennsylvania Board of Probation and Parole's (Board) August 8, 2017 order denying his request for administrative relief. Stroud is represented in this matter by Northumberland County Public Defender James L. Best, Esquire (Counsel), who has filed a Motion for Leave to Withdraw as Counsel (Motion) and submitted an amended no-merit letter in support thereof. After review, we grant Counsel's Motion and affirm the Board's order.

       Stroud is an inmate at the State Correctional Institution (SCI) at Coal Township. On March 6, 2011, Stroud was reparoled from his 4½ to 15-year sentence for robbery, manslaughter and probation violations (Original Sentence). *See* Certified Record (C.R.) at 1-3, 40-45. At that time, his maximum sentence release date was August 7, 2015. As a condition of his reparole, Stroud consented to the following special condition:

> If you are convicted of a crime committed while on parole/reparole, the Board has the authority, after an appropriate hearing, to recommit you to serve the balance of

the sentence or sentences which you were serving when paroled/reparoled, with no credit for time at liberty on parole.

C.R. at 44. Stroud did not object to the above-quoted parole condition.

On February 9, 2012, Stroud was arrested and charged by the United States Marshals Service for manufacturing counterfeit currency, possession of counterfeit currency with intent to defraud, and dealing in counterfeit currency (Federal Charges). *See* C.R. at 48; *see also* Supplemental Certified Record (S.C.R.) at 9A-15A. Stroud was held in a federal detention center. *See* C.R. at 48. On February 23, 2012, the Board issued a warrant to commit and detain Stroud. *See* C.R. at 47. Stroud did not post bail and remained in federal custody. *See* C.R. at 48. On March 8, 2012, Stroud pled guilty to the Federal Charges. *See* S.C.R. at 9A. On July 10, 2012, Stroud was sentenced to serve 41 months in federal prison. *See* C.R. at 51; *see also* S.C.R. at 10A.

On August 15, 2012, the Board issued a warrant for Stroud's arrest as a convicted parole violator (CPV), which declared: "It is hereby ordered that [Stroud] be retaken and returned forthwith to the actual custody within the Pennsylvania enclosure, and we hereby require an officer of the [Board], to so retain and return [Stroud] . . . ." C.R. at 46. The warrant further represented: "Although [Stroud's] original maximum sentence [release date] was [August 7, 2015], the maximum sentence is being extended due to a new conviction. The new maximum sentence will be computed upon recording of the Board's final action. [Stroud] owes approximately 4 years, 5 months and 1 day." C.R. at 46. Stroud remained in federal custody until he was returned to Pennsylvania's Department of Corrections on October 28, 2016. *See* C.R. at 51, 65; *see also* S.C.R. at 9A-10A.

On November 9, 2016, the Board issued to Stroud a notice of charges based upon his federal conviction and a hearing date. *See* S.C.R. at 16A. On November 14, 2016, Stroud signed a Waiver of Revocation Hearing and

2

Counsel/Admission Form (Form), thereby admitting he committed and was convicted of the Federal Charges while on parole, and waiving his right to a parole revocation hearing "[w]ith full knowledge and understanding" of his rights. S.C.R. at 19A. The Form reflects Stroud's understanding that his admission could be withdrawn within 10 calendar days, and he did not withdraw it. *See* S.C.R. at 19A; *see also* Board Br. at 7-8. On December 21, 2016, the second Board member voted to accept Stroud's admissions and recommit him as a CPV. *See* C.R. at 53-60.

By February 17, 2017 decision (mailed March 8, 2017), the Board recommitted Stroud "as a [CPV] to serve 24 months backtime," without credit for time spent at liberty on parole, making his new maximum sentence release date November 13, 2020. C.R. at 61; *see also* C.R. at 53-60. On March 17, 2017, Stroud filed an Administrative Remedies Form with the Board, claiming the Board erred by allowing him to serve his federal sentence before serving his recommitment backtime. *See* C.R. at 66-69. On June 12, 2017, Stroud requested the status of his appeal and stated that he was "challenging the [] decision of the Board [] recalculating [his] maximum date and the (24) months back[time] and the revocation of [his] street time[.]" C.R. at 70; *see also* C.R. at 71. By decision mailed August 8, 2017, the Board denied Stroud's appeal. *See* C.R. at 73. Stroud timely appealed from the Board's decision to this Court, which ordered the Northumberland County Public Defender to defend him.[1]

On February 26, 2018,[2] Counsel filed a withdrawal motion and a no-merit letter. On March 1, 2018, this Court denied Counsel's withdrawal motion based on Counsel's failure to properly address Stroud's issues and directed Counsel

---

[1] "Our review in a parole revocation action is limited to determining whether the findings were supported by substantial evidence, whether constitutional rights were violated, or whether the Board committed an error of law." *Flowers v. Pa. Bd. of Prob. & Parole*, 987 A.2d 1269, 1271 n.3 (Pa. Cmwlth. 2010).

[2] By February 1, 2018 order, this Court granted Counsel an extension of time to file a brief.

to file either an amended motion and no-merit letter that adequately addressed Stroud's legal issues, or to submit a brief on the merits. On March 5, 2018, Counsel filed the Motion and an amended no-merit letter.[3] On July 13, 2018, this Court ordered Counsel's Motion to be considered along with the merits of Stroud's appeal.

This Court has held that in order to withdraw, "counsel . . . must provide a 'no-merit' letter which details 'the nature and extent of [counsel's] review and list[s] each issue the petitioner wished to have raised, with counsel's explanation of why those issues are meritless.'" *Zerby v. Shanon*, 964 A.2d 956, 961 (Pa. Cmwlth. 2009) (quoting *Commonwealth v. Turner*, 544 A.2d 927, 928 (Pa. 1988)). "[C]ounsel must fully comply with the procedures outlined in *Turner* to ensure that each of the petitioner's claims has been considered and that counsel has [] substantive reason[s] for concluding that those claims are meritless." *Hont v. Pa. Bd. of Prob. & Parole*, 680 A.2d 47, 48 (Pa. Cmwlth. 1996). Counsel is also required to "notify the parolee of his request to withdraw, furnish the parolee with [] a copy of . . . [the] no-merit letter satisfying the requirements of *Turner*, and inform the parolee of his right to retain new counsel or submit a brief on his own behalf." *Reavis v. Pa. Bd. of Prob. & Parole*, 909 A.2d 28, 33 (Pa. Cmwlth. 2006). This Court must then "conduct its own independent review of the petition to withdraw and must concur in counsel's assessment before [it] may grant counsel leave to withdraw." *Hont*, 680 A.2d at 48.

In reviewing Counsel's no-merit letter herein, this Court notes that the letter contains the procedural history of Stroud's case, as well as Counsel's review of the record and relevant statutes and case law. Counsel served Stroud with a copy of the no-merit letter and his Motion, and notified Stroud that he may either obtain

---

[3] The no-merit letter attached to the Motion was the February 26, 2018 no-merit letter submitted with the original withdrawal motion. However, according to the certificate of service, the Motion and the amended no-merit letter were purportedly mailed to Stroud on March 12, 2018. Notably, the amended no-merit letter was dated February 26, 2018, like the original no-merit letter.

substitute counsel or file a brief on his own behalf.[4]  Counsel further stated therein that Stroud is challenging whether "[Section 6138(a)(5.1) of the Prisons and Parole Code[5] (Parole Code)] require[s] that the Board credit a [CPV] for time served in federal prison on a new conviction if the Board did not require the [CPV] to serve his state term first[.]"[6]  Counsel No-Merit Letter at 2.  In his no-merit letter to this Court,

---

[4] Stroud did not obtain substitute counsel but rather, after receiving an extension, timely filed a brief on May 11, 2018.

[5] 61 Pa. C.S. § 6138(a)(5.1) (effective October 27, 2010).

[6] Counsel's no-merit letter states that Stroud's revocation hearing did not occur until after he was returned to state custody in October 2016 and, thus, it "would not have been possible for [Stroud] to serve his state sentence prior to the completion of the federal sentence because his revocation did not occur until after he completed the federal term."  Counsel No-Merit Letter at 4. The no-merit letter does not specifically address Stroud's claim that the Board violated his due process right to a timely revocation hearing, but does explain that it was deferred pending his return to state custody.  To the extent that Counsel's cursory reference to that issue may be an error, it is harmless error in this instance.  First, because Stroud did not raise the issue before the Board or in his Administrative Remedies Form, "[it] has been waived and cannot be considered for the first time in his judicial appeal."  *Dear v. Pa. Bd. of Prob. & Parole*, 686 A.2d 423, 426 (Pa. Cmwlth. 1996).

Second, even if Counsel and this Court addressed that issue, Stroud's claim would fail. Section 71.4(1)(i) of the Board's Regulations provides:

> If a parolee is confined outside the jurisdiction of the Department of Corrections, such as . . . confinement in a [f]ederal correctional institution . . . [and] the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, . . . 314 A.2d 842 ([Pa.] 1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a [s]tate correctional facility.

37 Pa. Code § 71.4(1)(i); *see* Counsel No-Merit Letter at 2-3.  This Court has ruled, "[b]ased upon the express provisions of Section 71.4(1) of the Board's [R]egulations, [Stroud] waived his right to challenge the timeliness of his revocation hearing when he expressly waived his right to have a hearing in the first place."  *Fisher v. Pa. Bd. of Prob. & Parole*, 62 A.3d 1073, 1075 (Pa. Cmwlth. 2013); *see also Santosusso v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth. No. 574 C.D. 2017, filed January 30, 2018).  "The waiver of the right to a hearing necessarily encompasses the right to advance claims of error [Stroud] could have raised at the hearing."  *Fisher*, 62 A.3d at 1075-76. Moreover, there is no record support for Stroud's assertion that he raised a timeliness objection at his revocation hearing, *see* Stroud Br. at 10, particularly since no revocation hearing was held.  *See* C.R. at 53.

Finally, had Stroud not waived the issue or his rights, "the Board's duty to hold a revocation hearing . . . [was] deferred until [Stroud was] returned to a[n] SCI regardless of when the Board

Counsel provides sufficient reasons why Stroud's issues are without merit. Accordingly, this Court concludes that Counsel complied with *Turner's* technical requirements and will now independently review the merits of Stroud's appeal to determine whether to grant or deny Counsel's Motion.

Initially, Section 6138(a) of the Parole Code provides, in relevant part:

(1) A parolee under the jurisdiction of the [B]oard released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record, may at the discretion of the [B]oard be recommitted as a parole violator.

. . . .

(5) If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term imposed in the following cases:

(i) If a person is paroled from a State correctional institution and the new sentence imposed on the person is to be served in the State correctional institution.

(ii) If a person is paroled from a county prison and the new sentence imposed upon him is to be served in the same county prison.

(iii) In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.

---

received official verification of [his] new conviction." *Brown v. Pa. Bd. of Prob. & Parole*, 184 A.3d 1021, 1025 (Pa. Cmwlth. 2017); *see also Calloway v. Pa. Bd. of Prob. & Parole*, 692 A.2d 641, 642 (Pa. Cmwlth. 1997) ("[T]he Board has no duty to hold a parole revocation hearing for [an offender] while he is in federal custody."). Clearly, the Board's November 9, 2016 commencement of Stroud's revocation proceedings and Stroud's November 14, 2016 waiver occurred well within 120 days of his October 28, 2016 return to state custody and, thus, was timely.

(5.1) If the parolee is sentenced to serve a new term of total confinement by a [f]ederal court or by a court of another jurisdiction because of a verdict or plea under paragraph (1), the parolee shall serve the balance of the original term before serving the new term.

61 Pa. C.S. § 6138(a).[7]

Stroud first contends that since Section 6138(a)(5.1) of the Parole Code required him to serve his Original Sentence before his federal sentence, the Board should have removed him from federal custody and returned him to Pennsylvania for his revocation hearing and service of his Original Sentence.

Section 71.4(1)(i) of the Board's Regulations specifies that "[i]f a parolee is confined outside the jurisdiction of the Department of Corrections, such as . . . confinement in a [f]ederal correctional institution . . . , a revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a [s]tate correctional facility." 37 Pa. Code § 71.4(1)(i). In addition, Section 71.5(a) of the Board's Regulations states: "If the parolee is . . . in [f]ederal custody, the Board may lodge its detainer[,] but other matters may be deferred until the parolee has been returned to a [s]tate correctional facility in this Commonwealth." 37 Pa. Code § 71.5(a). Section 71.5(c)(1) of the Board's Regulations further provides that parole revocation proceedings may be deferred during any period in which a parolee is unavailable. *See* 37 Pa. Code § 71.5(c)(1).

In *Brown v. Pennsylvania Board of Probation & Parole*, 184 A.3d 1021 (Pa. Cmwlth. 2017), wherein Brown similarly argued that Section 6138(a)(5.1) of the Parole Code required the Board to obtain him from federal custody to serve his state sentence, this Court declared:

---

[7] Thus, until Section 6138(a)(5.1) of the Parole Code became effective on October 27, 2010, when a parolee was sentenced to serve time in federal prison, he was to serve the new sentence before being recommitted to serve the balance of his original sentence. As of October 27, 2010, Section 6138(a)(5.1) of the Parole Code mandated that original state sentences are to precede new federal sentences.

> [U]nder [Sections 71.4(1)(i), 71.5(a) and 71.5(c)(1) of the Board's R]egulations, when a parolee is in federal custody, confined in a federal facility, or is otherwise unavailable, the Board's duty to . . . take other action beyond issuing a detainer, is deferred until the parolee is returned to a[n] SCI regardless of when the Board received official verification of a parolee's new conviction.

*Id.* at 1025.

Moreover, when analyzing the interplay between the Regulations and Section 6138(a)(5.1) of the Parole Code's sentence order requirements, the *Brown* Court ruled, based on circumstances similar to the instant case:

> [Brown's] argument presumes that the Board had the **ability to obtain him from federal custody** in order to hold a revocation hearing and recommit him as a CPV to serve the remainder of his original sentence in accordance with Section 6138(a)(5.1) [of the Parole Code]. However, the Board asserts that it does not have the ability to acquire a Pennsylvania parolee from the custody of another jurisdiction in order to recommit the parolee to serve the remainder of the original sentence. Brown has not provided any legal authority that grants the Board this authority. Thus, . . . Brown was **already unavailable to the Board** when he pled guilty and was sentenced, as well as when it received official verification of his conviction. The Board could not have acquired Brown until after his release from federal custody . . . .

*Id.* at 1027 (emphasis in original); *see also Dill v. Pa. Bd. of Prob. & Parole*, 186 A.3d 1040, 1046 (Pa. Cmwlth. No. 1054 C.D. 2017, filed May 15, 2018) ("We rejected the parolee's claim that Section 6138(a)(5.1) of the Parole Code made him available to the Board prior to his release from the federal prison system." *Id.* "Simply, there is no legal authority for the notion that the Board could or should 'pluck' Dill from federal prison to hold a revocation hearing." *Id.* (quoting *Santosusso v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth. No. 574 C.D. 2017, filed

8

January 30, 2018)[8]); *Santosusso*, slip op. at 6 ("As in *Brown*, we are unaware of any authority supporting . . . that the Board has the power to pluck a Pennsylvania parolee from a federal prison for the purpose of recommitting him as a parole violator."); *Steward v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth. No. 684 C.D. 2017, filed March 16, 2018), slip. op. at 11. ("We are not persuaded by [parolee's] argument that Section 6138(a)(5.1) of the Parole Code made him available to the Board prior to his release from Maryland's Department of Corrections and return to SCI.").[9]

Here, as in *Brown* and *Dill*, this Court is not aware of any legal authority under which the Board could have retrieved Stroud from federal custody in order to conduct his revocation hearing and serve his state sentence pursuant to Section 6138(a)(5.1) of the Parole Code. The Board issued its February 23, 2012 warrant to commit and detain Stroud, which could not occur until his return from federal custody. Federal authorities did not return Stroud to the Board's custody until after he completed his federal sentence in October 2016. Therefore, he was unavailable to the Board until October 2016.[10] Thereafter, the Board promptly recommitted him to serve his state sentence. Accordingly, Stroud's argument that the Board should have obtained him from federal custody to first serve the backtime on his Original Sentence has no merit.

---

[8] This Court acknowledges that its unreported memorandum opinions may only be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Santosusso* and *Steward* are quoted herein for their persuasive value.

[9] This Court acknowledges that Dill was sentenced before Section 6138(a)(5.1) of the Parole Code was effective. Nevertheless, this Court specifically analyzed whether the Board was authorized to remove him from federal custody to serve his state sentence.

[10] We recognize that, in *Fumea v. Pennsylvania Board of Probation & Parole*, 147 A.3d 610 (Pa. Cmwlth. 2016), this Court concluded that the Board may not rely upon Section 71.4(1)(i) of the Board's Regulations to delay a parole revocation hearing where an offender is in federal custody but is otherwise *available* to the Board, such as where the offender posted bond on the federal charges.

In his Administrative Remedies Form, Stroud repeatedly interpreted Section 6138(a)(5.1) of the Parole Code to require the Board to apportion credit for his federal confinement to his Original Sentence. In his petition for review to this Court, Stroud further contended that he is entitled to credit toward his Original Sentence for time he spent in federal custody under the Board's detainer and the new federal charges. In the no-merit letter, Counsel acknowledged that Stroud sought credit for the time he was in federal custody both before and after his sentencing. *See* Counsel No-Merit Letter at 4. Although Stroud did not expound upon the sentence credit argument in his brief, since Counsel recognized the issue as one Stroud put before the Court in this appeal, this Court will address it.

"The general rule governing the allocation of credit for time served awaiting disposition of new criminal charge was established by our Supreme Court in *Gaito v. Pennsylvania Board of Probation* [&] *Parole, . . .* 412 A.2d 568 ([Pa.] 1980)."[11] *Armbruster v. Pa. Bd. of Prob. & Parole*, 919 A.2d 348, 352 (Pa. Cmwlth. 2007). Pursuant to *Gaito*, "this Court consistently held that once a parolee is sentenced on a new criminal offense, the period of time between arrest and

---

[11] The Parole Code was consolidated and became effective on October 13, 2009. *Gaito* was based upon Section 21.1 of what was commonly known as the Parole Act, Act of August 6, 1941, P.L. 861, *as amended*, added by Section 5 of the Act of August 24, 1951, P.L. 1401, *formerly* 61 P.S. § 331.21a(a), repealed by the Act of August 11, 2009, P.L. 147. Section 21.1(a) of the Parole Act similarly stated:

> Any parolee under the jurisdiction of the [Board] released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which . . . he pleads guilty . . . in a court of record, may, at the discretion of the [B]oard, be recommitted as a parole violator. If his recommitment is so ordered, he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty on parole . . . .

61 P.S. § 331.21a(a) (repealed).

sentencing, when bail is not satisfied [on the new criminal charge], must be applied toward the new sentence, and not to the original sentence."[12]  *Armbruster*, 919 A.2d at 352.

> Nevertheless, in affirming Stroud's recommitment, the Board explained:

> You were released on March 6, 2011, with a maximum sentence date of August 7, 2015.  At that point, 1615 days remained on your sentence.  Because you were recommitted as a [CPV], you are required to serve the remainder of your original term and are not entitled to credit for any periods of time you were at liberty on parole.  61 Pa. C.S. § 6138(a)(2).  You were detained by the Board from February 23, 2012 until July 10, 2012, when you were sentenced on your new conviction.  **You are entitled to 138 days credit on your [O]riginal [S]entence because your new sentence was to federal custody**.  You were released from your new sentence on October 28, 2016.  Adding 1477 days (1615 - 138) to October 28, 2016 results in your November 13, 2020 parole violation maximum date.

C.R. at 73 (emphasis added).  In its brief to this Court, the Board explains that the 138-day pre-sentence credit applied to Stroud's Original Sentence "was awarded based on this Court's decision in *Baasit v.* [*Pennsylvania Board of Probation and Parole*], 90 A.3d 74 (Pa. [Cmwlth.] 2014),[13] which was the controlling law at the time Stroud's sentence was recalculated."  Board Br. at 8 n.1.

In *Baasit*, this Court re-examined pre-sentence credit allocations between state and federal criminal sentences under then newly-added Section 6138(a)(5.1) of the Parole Code in light of what it deemed the Supreme Court's "more flexible approach to credit, as set forth in *Martin* [*v. Pennsylvania Board of*

___

[12] If the parolee met bail requirements for the new charges and was thus detained solely on the Board's detainer, time in custody is to be credited against the original sentence. *Smith v. Pa. Bd. of Prob. & Parole*, 133 A.3d 820 (Pa. Cmwlth. 2016) (*Smith I*), *rev'd,* 171 A.3d 759, 761 n.7 (Pa. 2017) (*Smith II*); *see also Gaito*.

[13] *Baasit* was decided on April 11, 2014.

*Probation & Parole*, 840 A.2d 299 (Pa. 2003),[14]]" *Baasit*, 90 A.3d at 83, and concluded that

> [b]ecause the parolee must serve the entirety of his original term before serving his new federal or different jurisdiction sentence [pursuant to Section 6138(a)(5.1) of the Parole Code] . . . the parolee no longer fell under [the] *Gaito* rule. As such, . . . any pre-sentence confinement credit earned by a parolee must be applied to his original sentence.

*Hammonds v. Pa. Bd. of Prob. & Parole*, 143 A.3d 994, 998 (Pa. Cmwlth. 2016). At the time the Board recommitted Stroud on February 17, 2017, *Baasit* was the controlling law.

Relying on *Baasit*, this Court decided *Smith v. Pennsylvania Board of Probation & Parole*, 133 A.3d 820 (Pa. Cmwlth. 2016) (*Smith I*). However, on appeal of *Smith I*, the Supreme Court expressly rejected the *Baasit* Court's interpretation that Section 6138(a)(5.1) of the Parole Code governs how pre-sentence credit should be allocated because Section 6138 of the Parole Code does not reference or pertain to pre-sentence credit.[15] *See Smith v. Pa. Bd. of Prob. & Parole*, 171 A.3d 759 (Pa. 2017) (*Smith II*). Accordingly, the *Smith II* Court disapproved of *Baasit* and declined to extend *Martin*, declaring that, notwithstanding the enactment of Section 6138(a)(5.1) of the Parole Code, "***Gaito* remains the general law in this Commonwealth respecting how credit should be allocated for a** [CPV] **who**

---

[14] The *Baasit* Court noted that the *Martin* Court departed from the *Gaito* rule, based on the *Martin* Court's declaration that "because the rules devised in *Gaito* and the underlying cases were incapable of anticipating all possible credit permutations," *Baasit*, 90 A.3d at 82 (quoting *Martin*, 840 A.2d at 308), the Board had flexibility in allocating pre-sentence confinement credit.

[15] The *Smith II* Court also expressly rejected Smith's argument which Stroud similarly makes herein contending that the primary jurisdiction doctrine requires pre-sentence confinement credit to be allocated to the first jurisdiction to arrest the offender. The *Smith II* Court concluded that "[t]he doctrine of primary jurisdiction simply relates to the question of which sovereign exercises jurisdiction first over a defendant; it does not govern how credit should be allocated when two or more sovereigns impose sentences." *Id.* at 770.

**receives a new sentence of incarceration**[.]"[16]  *Smith II*, 171 A.3d at 768-69 (emphasis added); *see also Brown*.  Thus, the Board does not have flexibility to determine the sentence to which credit should be applied.

Pursuant to *Gaito* and *Smith II*, the time Stroud was held on the Board's detainer, the new federal charges *should have been* credited to his federal sentence. However, before *Smith II* was decided and *Baasit* controlled, the Board credited to Stroud's original sentence the 138 days between February 23, 2012 to July 10, 2012 when he was confined in federal custody on both his new federal charges and the Board's detainer.  Stroud has not cited to and this Court has not found any legal authority under which the Board could credit Stroud's original sentence for the entire time he spent in federal custody from his July 10, 2012 sentencing until his October 28, 2016 release.  Moreover, the *Smith II* Court settled that Section 6138(a)(5.1) of the Parole Code does not affect sentence credit and that the cases Stroud cites in support of flexible and/or equitable apportionment, *Baasit* and *Martin*, do not afford the Board discretion to credit Stroud's sentence as he requested.  Therefore, the Board did not err by crediting Stroud's original sentence only for the 138 days he spent in pre-sentence confinement.

Based on the foregoing, this Court concludes that Counsel complied with *Turner's* technical requirements and confirms based upon an independent record review that Stroud's appeal lacks merit.  Accordingly, this Court grants Counsel's Motion and affirms the Board's order.

_____
ANNE E. COVEY, Judge

---

[16] The sole exception to *Gaito's* general rule, set forth in *Martin*, allows pre-sentence credit to be applied to the original sentence "when [an] offender is incarcerated both on Board detainer and for new charges and receives new sentence of imprisonment that is shorter than term of pre-sentence incarceration[.]"  *Smith II*, 171 A.3d at 761 n.6.  Because Stroud's federal sentence was longer than his pre-sentence incarceration, the *Martin* exception does not apply in this case.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Johnnie X. Stroud,  :
                   Petitioner  :
                                 :
           v.  :
                                 :
Pennsylvania Board of  :
Probation and Parole,  :  No. 1241 C.D. 2017
                 Respondent  :

## O R D E R

AND NOW, this 22nd day of October, 2018, James L. Best, Esquire's Motion for Leave to Withdraw as Counsel is GRANTED, and the Pennsylvania Board of Probation and Parole's August 8, 2017 order is AFFIRMED.

_____
ANNE E. COVEY, Judge