IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Odell Cannon,                          :
                    Petitioner         :
                                       :
        v.                             :   No. 62 C.D. 2021
                                       :   SUBMITTED:  August 6, 2021
Pennsylvania Parole Board,             :
                    Respondent         :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED:  November 30, 2021

Odell Cannon (Petitioner) petitions for review of the Pennsylvania Parole Board's (Board) December 30, 2020 order, which affirmed in part and reversed in part its June 6, 2019 decision. Through that order, the Board affirmed that Petitioner's April 26, 2019 parole revocation hearing was timely and declined to apply credit for time served beyond the maximum date on Petitioner's federal sentence towards Petitioner's newer state sentence, but modified the decision by awarding such credit towards Petitioner's original state sentence. Petitioner's counsel, Dana E. Greenspan, Esq. (Counsel), has submitted a Motion for Leave to Withdraw as Counsel (Motion to Withdraw) along with a no-merit letter explaining that the petition for review (Petition) lacks merit.[1] In addition, the Board has filed an

---

[1] Through this type of letter, an attorney seeks to withdraw from representation of a parole violator because "the [violator's] case lacks merit, even if it is not so anemic as to be deemed wholly frivolous." *Com. v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007).

Such letters are referred to by various names by courts of this Commonwealth. *See, e.g.*, *Com*[.] *v. Porter*, . . . 728 A.2d 890, 893

**(Footnote continued on next page…)**

amended application to suppress a *pro se* brief submitted by Cannon (Amended Application). After thorough consideration, we grant Counsel's Motion to Withdraw, deny the Amended Application, and affirm the Board's order.

## I. Background

On October 13, 2004, the Board paroled Petitioner from a 7-to-14-year state sentence (original sentence) for aggravated assault and possession of drugs with intent to distribute; at that point, the time left on this sentence was 2,537 days, resulting in a maximum date of September 24, 2011. Certified Record (C.R.) at 7. Thereafter, on April 1, 2006, Petitioner engaged in a drug-related shootout with another individual in Coatesville, Pennsylvania, which resulted in Petitioner killing that person and getting shot six times himself. *Id.* at 13-14; 16-17. On May 22, 2006, the Board issued a 48-hour detainer due to Petitioner's involvement in this incident.[2] *Id.* at 11. Federal authorities subsequently indicted Petitioner on May 24, 2006, in connection with the April 1, 2006 incident, and issued a warrant for his arrest, after which he was taken into federal custody. *Id.* at 239-40. The Board then issued a warrant for Petitioner's arrest on June 13, 2006. *Id.* at 12. On July 27, 2006, Petitioner was charged in the Court of Common Pleas of Chester County (state court)

---

& n.2 ([Pa.] 1999) (referring to such a letter as a "'no[-]merit' letter" and noting that such a letter is also commonly referred to as a "*Finley* letter," referring to the Superior Court case *Commonwealth v. Finley*, . . . 479 A.2d 568 ([Pa. Super.] 1984)); *Zerby v. Shanon*, 964 A.2d 956, 960 (Pa. Cmwlth. 2009) ("*Turner* letter")[, referring to the Pennsylvania Supreme Court case *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988)]; *Com*[.] *v. Blackwell*, 936 A.2d 497, 499 (Pa. Super. 2007) ("*Turner/Finley* letter").

*Hughes v. Pa. Bd. of Prob. & Parole*, 977 A.2d 19, 25 n.2 (Pa. Cmwlth. 2009).

[2] Thereafter, the Board extended the detainer pending disposition of the subsequent criminal charges against Petitioner. C.R. at 20, 23-30.

with numerous state crimes in connection with the April 1, 2006 shootout. *Id.* at 15-16.

On March 21, 2007, Petitioner was found guilty in the United States District Court for the Eastern District of Pennsylvania (federal district court) of felon in possession of a firearm and violent felon in possession of body armor, and was sentenced to 180 months of imprisonment, as well as 5 years of supervised release. *Id.* at 45-46.  The federal district court awarded Petitioner credit towards his federal sentence for time served in pretrial detention from May 22, 2006, through March 20, 2007.  *Id.* at 284.[3]

On April 5, 2010, Petitioner was ordered to be transported from the federal penitentiary in White Deer, Pennsylvania, to the Chester County Prison (county prison), so that he could be tried on the state charges that had also been lodged against him. *Id.* at 177. On July 7, 2010, Petitioner was convicted in state court of third-degree murder and criminal conspiracy to commit aggravated assault. *Id.* at 56. As a result, Petitioner was sentenced to consecutive terms in state prison of 20 to 40 years for murder and 5 to 10 years for conspiracy. *Id.*

On January 15, 2019, the federal district court amended its judgment by dismissing the charge of violent felon in possession of body armor and resentencing Petitioner to 57 months of imprisonment and 3 years of supervised release, a marked decrease from the original 180-month carceral term and 5 years of supervision. *Id.* at 48-50.[4] Accordingly, Petitioner's statutory release date for his federal sentence

---

[3] This included credit for time served between May 22, 2006, when the Board issued its 48-hour detainer, and May 24, 2006, when the federal government indicted Petitioner.

[4] This was due to decisions by the United States Supreme Court and the United States Court of Appeals for the Third Circuit that affected the sentencing guidelines that had been applicable to **(Footnote continued on next page…)**

was recalculated as August 4, 2010, which reflected 303 days of credit for time served in pretrial detention and 200 days of good time conduct credit; as such, he had served more than eight years of extra time in federal prison.[5] *Id.* at 284. On January 30, 2019, Petitioner was released from federal custody to the Board's detainer and transferred into the state correctional system. *Id.* at 55, 257.

The Board then held a parole revocation hearing on April 26, 2019. Of particular relevance to this appeal, Petitioner argued during this revocation hearing that it should have been held while he was confined in county prison during his state trial in 2010[6] and, in addition, sought credit towards his state sentences for the excess time he had served while in federal custody. *Id.* at 116-18. On June 6, 2019, the Board issued its decision, through which it ordered that Petitioner serve 36 months of backtime on his original sentence as a convicted parole violator, concluded that it was prohibited by law from awarding him street time credit, due to the nature of his more recent offenses, and recalculated the maximum date on his original sentence as April 30, 2026. *Id.* at 260. However, the Board did not address Petitioner's argument about the timeliness of his parole revocation hearing or his claim regarding credit for the excess time he had served on his federal sentence.

---

Petitioner's federal criminal case, which led to Petitioner's original federal sentence being vacated in 2018. *See* C.R. at 117-18.

[5] According to the Federal Bureau of Prisons Credit Sheet dated December 10, 2020, Petitioner served a total 152 months in federal prison on the federal district court's sentence. C.R. at 284. Petitioner therefore served 2,537 days in excess of his recalculated 57-month federal sentence. *Id.*

[6] The record is unclear as to precisely when Petitioner was in county prison during the 2010 state trial and the subsequent sentencing. The state court docket indicates that his trial was scheduled for the May 10, 2010 session and a transportation order was issued on April 5, 2010. C.R. at 176-77. The docket shows that he was sentenced on July 7, 2010, but there is no indication as to when he was returned to federal custody. *Id.* at 183.

Petitioner then filed an administrative appeal of this decision on June 19, 2019, in which he reiterated his arguments that his parole revocation hearing had not been held in a timely fashion, as well as that the Board had erroneously failed to give him credit towards his state sentences for the excess time he served on his federal sentence. *Id.* at 274-78. The Board responded on December 30, 2020, by affirming its June 6, 2019 decision in part and modifying it in part. Therein, the Board concluded that its parole revocation hearing in 2019 had been timely, since Petitioner had not been available for such a hearing in 2010, despite his physical presence in county prison, because he was still serving his federal sentence at that point in time. *Id.* at 291. The Board explained that Petitioner only became available upon his return to the state prison system on January 30, 2019, and thus, his April 26, 2019 hearing was timely. *Id.* In addition, the Board modified its prior order by taking 2,537 days of the excess time he had served in federal custody, crediting those days towards his original sentence, and recalculating the maximum date on his original sentence as July 16, 2017. *Id.* at 292. In other words, the Board credited Petitioner with the full amount of time left on his original sentence. The Board also explained to Petitioner that "[a]ny [excess] time spent incarcerated [on your federal sentence] that was not allocated toward [your] original sentence will be calculated by the Department of Corrections and credited toward [your new state sentence]." *Id.*

Counsel then filed the Petition with our Court on behalf of Petitioner. Therein, she asserted that the Board violated Petitioner's due process rights by failing to hold a parole revocation hearing within 120 days, as required by the Board's regulations. Pet. ¶¶ 9-10. Counsel further argued that the Board abused its discretion by not properly giving Petitioner credit for the excess time he served in federal custody. *Id.* ¶¶ 6-7. Finally, Counsel asserted that the Board abused its discretion by failing to

5

credit the remainder of that excess time towards Petitioner's new sentence. *Id.* ¶¶ 11-13.

On April 16, 2021, Counsel filed her Motion to Withdraw along with a no-merit letter. In these filings, Counsel expresses her opinion that Petitioner's legal arguments are without merit and, consequently, that she should be allowed to withdraw from representing him in this matter, as there is no viable basis for continuing to pursue this matter. No-merit Letter at 1-8. Thereafter, on May 17, 2021, Cannon filed his *pro se* brief, in which he repeats the claim that he was not properly given all the time credit towards his state sentences to which he was entitled as a result of the excess time he spent in federal prison. Cannon's Br. at 5-8. The Board responded to Cannon's *pro se* brief by filing its Amended Application, through which it requested that we suppress the brief, due to Cannon's failure to comply with the Pennsylvania Rules of Appellate Procedure's requirements regarding the brief's form and substance. Amended Application at 2-3.

## II. Discussion

### A. No-merit Letter

Before we can address the validity of Petitioner's arguments, we must assess the adequacy of Counsel's no-merit letter. Throughout this process, Petitioner has only sought to challenge the Board's calculations of time credited towards his state sentences, as well as the timeliness of his revocation hearing. For this reason, Counsel appropriately elected to file a no-merit letter. *See Seilhamer v. Pa. Bd. of Prob. & Parole*, 996 A.2d 40, 43 n.4 (Pa. Cmwlth. 2010). "A no-merit letter must include an explanation of 'the nature and extent of counsel's review and list each issue the petitioner wished to have raised, with counsel's explanation of why those issues are meritless.'" *Id.* at 43 (quoting *Turner*, 544 A.2d at 928) (brackets

6

omitted).[7] As long as a no-merit letter satisfies these basic requirements, we may then review the soundness of a petitioner's request for relief. *Zerby*, 964 A.2d at 960. However, in the event the letter fails on technical grounds, we must deny the request for leave to withdraw, without delving into the substance of the underlying petition for review, and may direct counsel to file either an amended request for leave to withdraw or a brief on behalf of their client. *Id.*

Counsel's no-merit letter satisfies these technical requirements. It contains a recitation of the relevant factual and procedural history, a discussion of the arguments raised by Petitioner, and a thorough explanation, backed by case and statutory law, regarding Counsel's conclusion that none of these arguments afford Petitioner a valid basis for relief. No-merit Letter at 1-8. Further, Counsel has appropriately provided Petitioner with copies of these documents, notified Petitioner about Counsel's intentions, and informed Petitioner of his right to hire another lawyer to represent him in this matter or to represent himself *pro se*. Motion to Withdraw, ¶¶8-9; *id.*, Certificate of Service.

### B. Petition

Consequently, we will proceed to an independent examination of the Petition, in order to determine whether either of Petitioner's claims are meritorious.[8] With

---

[7] Counsel must also "notify the parolee of his request to withdraw, furnish the parolee with a copy of the no-merit letter satisfying the requirements of *Turner*, and inform the parolee of his right to retain new counsel or submit a brief on his own behalf." *Stroud v. Pa. Bd. of Prob. & Parole*, 196 A.3d 667, 670 (Pa. Cmwlth. 2018).

[8] "Our scope of review over actions of the Board is limited to determining whether the decision was supported by substantial evidence, whether an error of law occurred or whether constitutional rights were violated." *Ramos v. Pa. Bd. of Prob. & Parole*, 954 A.2d 107, 109 n.1 (Pa. Cmwlth. 2008).

regard to Petitioner's timeliness argument, we agree with Counsel that it lacks merit. The Board's regulations state, in relevant part, that

> [i]f a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution . . . the [parolee's parole] revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

37 Pa. Code § 71.4(1)(i). In addition, these regulations state that "[i]f the parolee is in custody in another state, or in Federal custody, the Board may lodge its detainer, but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth." *Id.* § 71.5(a). The regulations further provide that "[t]he unavailability of a parolee or counsel" tolls the period for conducting hearings. *Id.* § 71.5(c)(1). This Court has routinely held that a parolee is unavailable for a revocation hearing before the Board while in federal custody. *See, e.g.*, *Stroud*, 196 A.3d at 673 ("[W]hen a parolee is in federal custody, confined in a federal facility, or is otherwise unavailable, the Board's duty to take other action beyond issuing a detainer, is deferred until the parolee is returned to [a state correctional institution].");  *Dill v. Pa. Bd. of Prob. & Parole*, 186 A.3d 1040, 1046 (Pa. Cmwlth. 2018) ("[T]he Board does not have the power to pluck a Pennsylvania parolee from a federal prison for the purpose of recommitting him as a parole violator."); *Brown v. Pa. Bd. of Prob. & Parole*, 184 A.3d 1021, 1025-28 (Pa. Cmwlth. 2017) (a parolee held in federal custody is not available to the Board for purposes of holding a parole revocation hearing).

Petitioner argues that he became available to the Board when he was transferred to county prison during his trial on state charges in 2010. However, this

8

transfer did not cause the federal government to relinquish control over Petitioner, so as to make him available to the Board for a revocation hearing.

> When a prisoner is detained pursuant to a writ for the purposes of presenting him to the court on new criminal charges, the prisoner is considered to remain in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person. The receiving sovereign is, therefore, considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him.

*Morgan v. Pa. Bd. of Prob. & Parole*, 814 A.2d 300, 303 (Pa. Cmwlth. 2003). Furthermore, the Board's regulations provide that a parolee is outside its jurisdiction if they are "confin[ed] in a county correctional institution." 37 Pa. Code § 71.4(1)(i). Thus, Petitioner was not available to the Board throughout his time in county prison in 2010, both because he was merely being "borrowed" from federal prison during that period and because he was in a county facility. Therefore, contrary to Petitioner's assertions, he became available to the Board on January 30, 2019 when he was released from federal custody and transferred to state custody. The revocation hearing was held on April 26, 2019, which was within the 120 days required by Section 71.4(1)(i). Thus, Petitioner's revocation hearing was timely.

We also agree with Counsel that Petitioner's sentence credit arguments are baseless. Petitioner served a total of 152 months in federal prison, before his federal sentence was recalculated to 57 months with a completion date of August 4, 2010. *See* C.R. at 284-86. Between that determination and the credit he received towards his federal sentence for time spent in pretrial detention and for good time conduct, Petitioner has already received credit towards his federal sentence for all time from May 22, 2006, up through and including August 4, 2010; thus, to give him *additional*

9

credit towards his original sentence for that time he spent in custody prior to his federal trial would impermissibly grant him "double credit." *Burno v. Pa. Bd. of Prob. & Parole*, 67 A.3d 1280, 1285-86 (Pa. Cmwlth. 2013); *see Gaito v. Pa. Bd. of Prob. & Parole*, 412 A.2d 568, 571 (Pa. 1980) ("If a defendant . . . remains incarcerated prior to trial because he has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to his new sentence."). Given this, as well as the Board's crediting of 2,537 days' worth of excess federal time towards Petitioner's original sentence, *i.e.*, the full amount of time left on that sentence, the Board did not err or abuse its discretion with regard to its treatment of Petitioner's original sentence. Additionally, "[t]he Department [of Corrections], not the Board, is responsible for calculating the minimum and maximum terms of prisoners committed to its jurisdiction[.]" *Gillespie v. Dep't of Corr.*, 527 A.2d 1061, 1065 (Pa. Cmwlth. 1987). Thus, the Board only had authority to grant credit towards Petitioner's original sentence and could not apply any remaining, uncredited excess federal time towards his new sentence; instead, that responsibility falls upon the Department of Corrections. Consequently, we conclude that the Board did not err or abuse its discretion by declining to award Petitioner any credit towards his new sentence.

### C. Amended Application

With regard to Cannon's *pro se* brief, we agree with the Board that it fails to comply with the requirements of the Pennsylvania Rules of Appellate Procedure. In his brief, Cannon does not include a summary of his argument, as required by Rule of Appellate Procedure 2111(a)(6), and neglects to include a verbatim recitation of the order he seeks to challenge, as required by Rule of Appellate Procedure 2115(a). This, plus Cannon's jumbling of constitutional and statutory theories and extremely

cursory legal analysis, prevents us from conducting meaningful appellate review of the arguments he attempts to put forth. Accordingly, we conclude that the proper response is to strike Cannon's *pro se* brief. *See* Pa. R.A.P. 2101; *Means v. Hous. Auth. of City of Pittsburgh*, 747 A.2d 1286, 1289 (Pa. Cmwlth. 2000); *Robinson v. Schellenberg*, 729 A.2d 122, 124 (Pa. Cmwlth. 1999).

### III. Conclusion

In light of the foregoing analysis, we grant Counsel's Motion to Withdraw, grant the Board's Amended Application, and affirm the Board's December 30, 2020 order.

_____
ELLEN CEISLER, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Odell Cannon,                          :
                    Petitioner         :
                                       :
        v.                             :  No. 62 C.D. 2021
                                       :
Pennsylvania Parole Board,             :
                    Respondent         :


# **O R D E R**


AND NOW, this 30th day of November, 2021, Dana E. Greenspan, Esquire's Motion for Leave to Withdraw as Counsel is GRANTED, Respondent Pennsylvania Parole Board's (Board) Amended Application to Suppress Nonconforming Brief is GRANTED, and the Board's December 30, 2020 order is AFFIRMED.


_____
ELLEN CEISLER, Judge