IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jaron Mitchell,      :
     Petitioner   :
           :
  v.         :
           :
Pennsylvania Parole Board,  :  No. 631 C.D. 2024
     Respondent :  Argued: November 6, 2025

BEFORE:  HONORABLE CHRISTINE FIZZANO CANNON, Judge
      HONORABLE STACY WALLACE, Judge
      HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON      FILED: December 11, 2025

    Jaron Mitchell (Mitchell), an inmate at the State Correctional Institution (SCI) at Rockview, petitions for review of a May 2, 2024, decision of the Pennsylvania Parole Board (Board) that denied his administrative appeal of a July 14, 2023, Board decision regarding the recalculation of his maximum sentence date after he was recommitted as a technical and convicted parole violator. Mitchell asserts that the Board failed to grant him credit for 11 days when he was held solely on a Board detainer after he served a term of incarceration in North Carolina on new charges. Upon review, we reverse and remand to the Board to award Mitchell credit in accordance with this opinion and recalculate his maximum sentence date.

## I. Factual and Procedural Background

    Mitchell previously pleaded guilty to robbery charges in Philadelphia and was sentenced to 4-10 years in prison (Original Sentence) with a minimum sentence date of May 29, 2018, and a maximum sentence date of May 29, 2024.

Certified Record[1] (C.R.) at 6. He was granted parole on the Original Sentence and released on December 8, 2018. *Id*. at 11-14. On June 28, 2019, he was deemed delinquent for failing to report to his parole officer and moving to North Carolina without permission. *Id*. at 18-21.

Mitchell was arrested in North Carolina on April 7, 2021, and charged with drug offenses including "death by distribution," which applies when the defendant sells drugs to someone who then dies from an overdose (North Carolina Charges). C.R. at 26; *see* N.C. Gen. Stat. § 14-18.4. On that date, the Board issued a detainer for Mitchell to ensure that after resolution of the North Carolina Charges, he would be returned to Pennsylvania for parole violation proceedings. C.R. at 20. Mitchell did not make bail in North Carolina and remained in custody on the North Carolina Charges; on April 4, 2023, he pleaded guilty to involuntary manslaughter to resolve those charges. *Id*. at 42. He was sentenced to 19 to 32 months and scheduled for release based on time served. *Id*. at 94. His maximum 32-month sentence on the North Carolina Charges would have elapsed in December 2023.

The record includes an April 4, 2023, memorandum from the North Carolina Department of Corrections to the county jail holding Mitchell on the North Carolina Charges; a checked box stated that Mitchell was to be released "to the custody of the [North Carolina] probation/parole officer" on April 7, 2023. C.R. at 99. The memorandum had a separate box, not checked, indicating that the offender was to be released immediately without conditions. *Id*. The record also includes emails sent on April 18, 2023, from a North Carolina county detention center lieutenant to Pennsylvania extradition personnel and advising that Mitchell was available for extradition to Pennsylvania. *Id*. at 89-91. Later that day, a director at

---

[1] Certified Record (C.R.) cites are based on electronic pagination.

the Pennsylvania Department of Corrections (DOC) approved Mitchell's extradition from North Carolina. *Id*. at 102-03.

On June 30, 2023, the Board held a revocation/violation hearing, at which Mitchell was represented by the Centre County Public Defender's Office. C.R. at 47-67. Mitchell admitted to failing to report to his parole officer, to moving to North Carolina, and to the North Carolina Charges. *Id*. at 53-57. He stated that he moved to North Carolina because his living situation in Philadelphia was poor and that the North Carolina Charges arose because a relative overdosed after finding and taking Percocet that Mitchell had been prescribed after an injury. *Id*. at 61

On July 14, 2023, the Board issued a decision sentencing Mitchell to 18 months for his parole violations arising from his technical violations and the North Carolina Charges. C.R. at 110. On July 24, 2023, the Board issued its recalculation of Mitchell's maximum sentence date for the Original Sentence. *Id*. at 108. Relevant to this appeal, the Board used April 18, 2023, the date North Carolina authorities advised Pennsylvania authorities that Mitchell was available for extradition to Pennsylvania, as his return to custody date. *Id*. at 108. Mitchell was awarded no credit for time at liberty while on parole or for the time he served on the North Carolina Charges; the Board imposed the entirety of his remaining sentence for the Original Sentence, or 1989 days, resulting in a new sentence beginning on April 18, 2023, and ending on September 27, 2028. *Id*.

Mitchell filed a timely counseled administrative appeal asserting that the recalculation of his Original Sentence maximum date should not have begun on April 18, 2023, when the North Carolina authorities advised Pennsylvania authorities that he was available for return to Pennsylvania, but on April 4, 2023, when he was sentenced to 19 to 32 months on the North Carolina Charges. C.R. at

3

113. He asserted that he should receive 14 days of credit on his recalculated sentence on the Original Charges or be released based on time served since his April 7, 2021, arrest for the North Carolina charges. *Id*. On May 2, 2024, the Board filed its order denying relief. *Id*. at 125-27. The Board did not specifically refute Mitchell's assertion that April 4, 2023, should have been his return date, but simply stated that the April 18, 2023, date was used because it was when the Board was advised of his availability for return to Pennsylvania. *Id*. at 126. Mitchell filed a timely counseled appeal to this Court.[2]

## II. Issue and Arguments

Mitchell maintains that based on the April 4, 2023, memorandum from the North Carolina Department of Corrections, which directed the county prison holding him on the North Carolina Charges to release him to a probation/parole officer on April 7, 2023, he became available to the Board on April 7, 2023. Mitchell's Br. at 14-15. He avers that between April 7, 2023, and April 18, 2023, when Pennsylvania authorities were informed that he was available for pickup in North Carolina, he was held solely on the Board's detainer and should receive credit on his recalculated maximum sentence date for those 11 days. *Id*. at 15. He refers to North Carolina's current sentencing law, which he avers involves calculation of the inmate's "specific credits applicable to the minimum and maximum sentences articulated in the sentencing court's order" and results in determination of an "unconditional release date," which Mitchell claims to be April 7, 2023. *Id*. at 15-16.

---

[2] On appeal to this Court, Mitchell adjusted the proposed date of relief from his April 4, 2023, sentencing on the North Carolina Charges to April 7, 2023, the date the memorandum directed his release to North Carolina parole authorities.

The Board responds that Mitchell was not entitled to any backtime credit because he was never solely incarcerated on the Board's April 7, 2021, detainer. Board's Br. at 9. The Board states that because the 11-day period at issue did not exceed the 32-month maximum sentence Mitchell received on the North Carolina Charges, those days cannot be credited to his original sentence. *Id*. The Board also maintains that April 7, 2023, was not the end of Mitchell's sentence on the North Carolina Charges because the memorandum he relies on did not release him unconditionally on that date, but rather to the custody of a probation/parole officer, and there is no dispute that April 7, 2023, was within the 32-month maximum sentence on the North Carolina Charges. *Id*. at 9-10. The Board avers that because Mitchell had not reached his maximum sentence date for the North Carolina Charges, he was not detained solely on the Board's detainer during the 11 days at issue and can receive no credit for those days. *Id*. at 10. The Board adds that even though North Carolina may have adjusted its sentencing scheme, it has not abandoned or changed the nature of parole, which North Carolina law defines in terms essentially identical to the understanding of parole in Pennsylvania. *Id*. at 10 (citing N.C. Gen. Stat. § 15A-1368(a)(1)).

In supplemental briefing ordered by this Court, Mitchell reiterates that North Carolina sentencing laws currently require determinate sentencing, which he describes as requiring sentencing courts to fix a "non-discretionary date of release" that cannot be altered by North Carolina's corrections authorities. Mitchell's Supp. Br. at 2. He maintains that the April 4, 2023, memorandum from North Carolina's corrections authorities to the county jail where he was being held on the North Carolina Charges, which directed that he "must be released" on April 7, 2023, to the custody of a probation/parole officer, meant that April 7, 2023, was the "non-

discretionary date" that he was to be released from physical custody in North Carolina. *Id*. at 3-4. This meant that the 11 days he spent in physical custody in North Carolina between April 7, 2023, and April 18, 2023, when North Carolina authorities informed Pennsylvania authorities that he was available for return to Pennsylvania, took place solely on Pennsylvania's detainer and should be credited to his new sentence on the Original Charges in Pennsylvania. *Id*. at 4. He adds that even if North Carolina authorities had a formal plan for him to be on parole, or "post-release supervision," in North Carolina after April 7, 2023, which the record does not indicate, that would amount to "constructive parole" and not a continuation of his incarceration on the North Carolina Charges. *Id*. at 5-6. As such, there was no basis in North Carolina law, and other than Pennsylvania's detainer, for him to be physically held after that date. *Id*.

In its supplemental brief, the Board largely reiterates the arguments from its primary brief, specifically that because the 11-day period that Mitchell spent in North Carolina custody after North Carolina authorities ordered his "release" on April 7, 2023, did not exceed the 32-month maximum sentence he received on the North Carolina Charges, those days cannot be credited to his Original Sentence. Board's Supp. Br. at 7-8. The Board explains that in North Carolina, an offender released prior to his maximum term is subject to "post-release supervision," which entails physical release from custody but continued "monitor[ing] and control" while he is in the outside community until reaching his maximum term date. *Id*. at 8. It is, the Board avers, the "functional equivalence of parole" in Pennsylvania. *Id*. at 9. To the Board, the existence of time remaining on Mitchell's North Carolina maximum sentence during the relevant 11 days means that he remained sufficiently under North Carolina "control," on pain of return to physical custody in North

6

Carolina if he violated his post-release supervision, that he was not held solely on Pennsylvania's detainer and those 11 days cannot be credited to his recalculated maximum sentence date on the Original Charges. *Id.*

### III. Discussion

"[I]f a defendant is being held in custody solely because of a detainer lodged by the Board and has otherwise met the requirements for bail on the new criminal charges, the time which he spent in custody shall be credited against his original sentence." *Gaito v. Pa. Bd. of Prob. & Parole*, 412 A.2d 568, 571 (Pa. 1980).[3] *Gaito* has been described as the "general rule governing the allocation of credit for time served awaiting disposition of new criminal charge[s.]" *Stroud v. Pa. Bd. of Prob. & Parole*, 196 A.3d 667, 674 (Pa. Cmwlth. 2018).

Although the rule has often been applied in the context of pre-sentence confinement on the new charges, nothing in our law precludes its application in the circumstances at issue here, where Mitchell seeks credit for the 11 days he spent in post-sentence confinement in North Carolina after he was sentenced in North Carolina on the new North Carolina Charges but before North Carolina authorities advised Pennsylvania authorities that he was available for return to Pennsylvania. *See Hears v. Pa. Bd. of Prob. & Parole*, 851 A.2d 1003, 1007 n.11 (Pa. Cmwlth. 2004) (stating that "when an offender is held *solely* on the Board's detainer he is entitled to credit for that time against his original sentence") (emphasis in original). In this instance, because sentencing on the new North Carolina Charges has already

---

[3] Since *Gaito*, our courts have revisited and clarified how credit is apportioned when a defendant is held on both a Board detainer and new criminal charges. *See Smith v. Pa. Bd. of Prob. & Parole*, 171 A.3d 759, 764-68 (Pa. 2017) (summarizing case law concerning that circumstance since *Gaito*). However, as will be discussed, that circumstance is not present here and the general rule set forth in *Gaito* for when a defendant is held solely on a Board detainer remains good law.

7

occurred, *Gaito*'s requirement that the defendant meet the "requirements for bail on the new criminal charges" is not at issue.

As noted, the Board's decision did not expressly address the 11 days at issue, stating only that April 18, 2023, was the date Mitchell became available to begin his recalculated sentence on the Original Charges; the Board now argues to this Court that Mitchell was still legally and technically in North Carolina custody on the new North Carolina Charges and that any credit should be applied to his North Carolina sentence even though he was "released" to parole authorities as of April 7, 2023, while Mitchell maintains that he should receive credit on his Original Sentence for the 11 days because he was held solely on the Board's detainer during that time.

The record reflects that while Mitchell was on parole from his Pennsylvania sentence on the Original Charges, he violated his parole and was arrested in North Carolina in April 2021 on the North Carolina Charges. He remained in custody for about 24 months on the North Carolina Charges before pleading guilty and being sentenced on or about April 4, 2023, to a maximum 32-month sentence on those charges. On or about the same date, he was deemed suitable for parole on the North Carolina Charges based on time served, and North Carolina authorities issued an April 4, 2023, memo ordering his "release . . . to the custody of the [North Carolina] probation/parole officer" on April 7, 2023.

It is unclear from the record what transpired over the next 11 days, but Mitchell was not released to North Carolina parole authorities on April 7, 2023. On April 18, 2023, an individual at the North Carolina county jail where Mitchell was incarcerated emailed Pennsylvania authorities and advised that Mitchell was ready for pickup from North Carolina; extradition and parole revocation proceedings occurred thereafter. *Id*. at 89-91 & 102-03. When Mitchell's maximum sentence

date was recalculated, he was not given credit for the 11 days between April 7, 2023, and April 18, 2023. *Id*. at 103.

This record contains no indication that "release to the custody of the probation/parole officer" means something different in North Carolina from what it means here, and the parties' briefs and supplemental briefs have not provided this Court with North Carolina case law, statutory authority, or regulations to the contrary. This Court is, therefore, left with no recourse but to read the plain language of the April 4, 2023, release memo and conclude that North Carolina authorities intended that Mitchell no longer be physically confined on the North Carolina Charges as of April 7, 2023. Put another way, "but for" the Board's detainer, Mitchell would have been physically released to serve the remainder of his sentence on the North Carolina Charges outside of North Carolina custody. However, 11 days elapsed during which he remained in physical custody before North Carolina authorities advised Pennsylvania authorities of his availability.

*Gaito* states that "if a defendant is being held in custody solely because of a detainer lodged by the Board and has otherwise met the requirements for bail on the new criminal charges, the time which he spent in custody shall be credited against his original sentence." 412 A.2d at 571; *see also Hears*, 851 A.2d at 1007 n.11 (stating that "when an offender is held *solely* on the Board's detainer he is entitled to credit for that time against his original sentence") (emphasis in original).

On this record and in the absence of evidence or authority that Mitchell was held jointly by Pennsylvania and North Carolina during the 11 days at issue, we can only conclude that he was held during that time solely on the Board's detainer.[4]

---

[4] At oral argument, Board counsel suggested that Section 6138(a)(4) of the Prisons and Parole Code, 61 Pa.C.S. § 6138(a)(4), bars the Board from awarding credit until the Board is

Accordingly, *Gaito* directs that those 11 days be credited to the recalculation of Mitchell's maximum sentence date on the Original Charges in Pennsylvania. As such, the Board erred.[5]

## IV. Conclusion

For the foregoing reasons, we reverse the Board's order denying Mitchell's administrative appeal from the recalculation of his maximum sentence date on his Original Sentence. The Parole Board is directed to recalculate Mitchell's maximum sentence date and award him credit in accordance with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

---

notified that a parole violator has become available to resume serving time. Section 6138(a)(4) states: "The period for which the offender is required to serve shall be computed by the board and shall begin on the date that the parole violator is taken into custody to be returned to the institution as an offender." The plain language of this provision does not mention the Board's awareness or knowledge of when a violator becomes available, and this provision does not support the Board's notice-oriented position.

Rather, this provision sets the date for recalculation purposes at the point when a parole violator becomes available for return to the Board. Here, Mitchell became legally available for return to the Board on April 7, 2023, after North Carolina parole authorities advised the prison holding him that he was to be released on that date to a parole officer. At that point, he was in custody solely on the Board's detainer and became available to be returned to the Board as a parole offender, even though he was held for 11 more days until the Board learned of his availability. As such, Section 6138(a)(4) does not preclude the credit Mitchell seeks here.

[5] Given this disposition, we do not reach Mitchell's additional argument that the Board here improperly attempts to reintroduce indeterminate sentencing to North Carolina law in an attempt to negate the plain language of the April 4, 2023, memo stating that he was to be released to North Carolina parole authorities on April 7, 2023.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jaron Mitchell,                           :
                    Petitioner            :
                                          :
          v.                              :
                                          :
Pennsylvania Parole Board,                :     No. 631 C.D. 2024
                    Respondent            :

# **O R D E R**

AND NOW, this 11th day of December, 2025, the May 2, 2024, order of the Pennsylvania Parole Board (Board) is **REVERSED**.  This matter is **REMANDED** to the Board to award Mitchell credit in accordance with this opinion and recalculate his maximum sentence date.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge