**Connel Clayton HUGHES, Petitioner**

**v.**

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 6, 2009.

Decided June 9, 2009.

Kent D. Watkins, Saint Clair, for petitioner.

Arthur R. Thomas, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

Before this Court is the Application for Leave to Withdraw as Counsel (Application) of Kent D. Watkins (Counsel) from the representation of Connel Clayton Hughes (Hughes). Hughes filed a Petition for Review (Petition) of the determinations of the Pennsylvania Board of Probation and Parole (Board) revoking Hughes' parole and recalculating his sentence.

On August 5, 1998, Hughes was sentenced to the following five concurrent sentences: (1) "six months to five years ... for possession with intent to deliver"; (2) two to eight years for possession with intent to deliver; (3) one to two years for possession of an instrument of crime; (4) six months to one year for unlawful possession of drug paraphernalia; and (5) 30 days for possession of marijuana. (Letter

from Counsel to Office of Chief Clerk, Commonwealth Court of Pennsylvania (No–Merit Letter) (October 6, 2008) at 1–2.) On July 22, 1999, the Board issued an order paroling Hughes as of November 17, 1999.

On December 4, 2000, the Board issued an order declaring Hughes delinquent as of November 21, 2000. On February 28, 2001, the Board issued an order recommitting Hughes as a technical parole violator to serve 12 months of backtime for two counts of "leaving the district without permission," two counts of "failure to report," and one count of "failure to comply with all laws." (Board Order, Feb. 28, 2001, R. at 11.) On December 17, 2002, the Board issued an order recommitting Hughes as a convicted parole violator to serve 24 months of backtime, when available, based on his conviction on two counts of using "a communication facility to distribute crack cocaine." (Board Order, Dec. 17, 2002, R. at 12.)

On February 24, 2005, the Board received a letter from Hughes, which the Board construed as a petition for administrative review, inquiring on the status of Hughes' parole and requesting a hearing from the Board. By letter mailed March 15, 2005, the Board responded that because Hughes was still serving a federal sentence he was not considered available to serve his backtime and, therefore, the Board had not yet recalculated his maximum date.

By order issued January 31, 2008, the Board, referring to its December 17, 2002 order recommitting Hughes as a technical and convicted parole violator to serve 24 months of backtime, recalculated Hughes' maximum date as May 2, 2014.

On February 28, 2008, Hughes mailed to the Board a Request for Administrative Review challenging the Board's January 31, 2008 order. In this request, Hughes alleged: (1) that his maximum date was not correctly calculated; (2) that there had not been a detention hearing on the federal charges of which he was convicted prior to his recommitment as a convicted parole violator, but only on his state charges, which were dismissed; and (3) that the recommitment hearing wherein he was determined to be a convicted parole violator was not held until 10 months after his guilty plea in federal court and was, therefore, untimely. Hughes also broadly alleged ineffective assistance of counsel and denial of his due process rights.

On April 14, 2008, the Board issued a new order modifying its prior order of January 31, 2008, and recalculated Hughes' maximum date to be August 31, 2014. On May 13, 2008, the Board mailed a response to Hughes' Request for Administrative Review, stating that his arguments regarding defects in the Board's recommitment of Hughes as a convicted parole violator were untimely, and that such claims could not be revived by the Board's subsequent recalculation orders. Regarding Hughes' arguments as to the defects in the Board's recalculation order mailed January 31, 2008, the Board stated that these arguments were rendered moot by the Board's subsequent recalculation decision issued April 14, 2008.

On June 12, 2008, Hughes, represented by Counsel, filed Hughes' Petition in this Court arguing that: (1) the Board's order issued April 14, 2008 improperly revoked Hughes' parole; (2) the Board failed to give Hughes credit for time served solely under the Board's warrant; and (3) the Board failed to hold a timely revocation hearing.

On July 2, 2008, the Board filed a Motion to Limit the Issue and Application for Stay (Motion to Limit). In the Motion to Limit, the Board requested that this Court

"limit the issue on appeal to whether Respondent correctly dismissed [Hughes'] pro se combined administrative appeal of a revocation decision and petition for administrative review of a separate and distinct recalculation order as untimely with respect to the revocation decision and as moot with respect to the recalculation order." (Motion to Limit at 1.) By order dated July 28, 2008, this Court granted the Motion to Limit. On October 8, 2008, Counsel filed his Application with this Court, along with his No–Merit Letter.

■ Before addressing the merits of Counsel's Application, we first review the steps counsel appointed to represent petitioners seeking review of determinations of the Board must take to withdraw from representation. The standards for an application to withdraw from representation in an appeal from a decision of the Board grew out of the standards for withdrawal of appointed counsel from direct and collateral appeals of criminal convictions. Interpreting a line of cases which began with the United States Supreme Court's decision in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the Pennsylvania Supreme Court in *Commonwealth v. McClendon*, 495 Pa. 467, 434 A.2d 1185 (1981), set out the modern standard for the steps a court-appointed attorney must take in order to withdraw from representation of a criminal defendant in a direct appeal. The Supreme Court stated that, in order to withdraw, the attorney must: (1) notify the court and the defendant of his belief that the appeal is wholly frivolous and of his intent to withdraw; (2) provide a brief to the court and the defendant which includes any matter in the record that could arguably support the defendant's appeal; and (3) advise the defendant of "his right to retain new counsel" or proceed pro se. *McClendon*, 495 Pa. at 470–72, 434 A.2d at 1186–87. These steps

are designed to protect an indigent criminal defendant's right to effective assistance of counsel under the Sixth Amendment of the United States Constitution and to ensure that the attorney seeking to withdraw is not forced to argue against his client, but presents the reviewing court with information that will aid it in determining whether the defendant's appeal is frivolous. *Anders*, 386 U.S. at 744–45, 87 S.Ct. 1396.

This Court first applied *McClendon* in the context of a petition for review from a determination of the Board in *Scott v. Jacobs*, 76 Pa.Cmwlth. 100, 463 A.2d 110 (1983), but did so without much explanation. In *Craig v. Pennsylvania Board of Probation & Parole*, 93 Pa.Cmwlth. 586, 502 A.2d 758 (1985), this Court explained its rationale for applying the *Anders/McClendon* requirements to counsel seeking to withdraw from representation of petitioners seeking review of parole revocation determinations, stating that doing so balanced the interest of indigent petitioners in effective assistance of counsel against the duty of attorneys not to press frivolous cases, recognized in case law and the Pennsylvania Code of Ethical Responsibility. *Craig*, 502 A.2d at 760–61. This rationale exhibits how the standard for counsel seeking to withdraw from representation of a petitioner in a parole determination appeal is connected to the right of the petitioner to effective assistance of counsel in that appeal.

In *Commonwealth ex rel. Remeriez v. Maroney*, 415 Pa. 534, 204 A.2d 450 (1964), the Pennsylvania Supreme Court, relying on *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), held that a hearing at which "[t]he petitioner was sentenced to imprisonment after revocation of a prior suspended sentence and probation" was "a critical stage in the proceeding against the accused" and that the petition-

er, therefore, had a right to effective assistance of counsel. *Remeriez*, 415 Pa. at 535–36, 204 A.2d at 450–51. Similarly, in *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), which dealt with a probation revocation hearing, the United States Supreme Court held that the Sixth Amendment requires "appointment of counsel for an indigent ... at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Id.* at 134, 88 S.Ct. 254. In *Commonwealth v. Tinson*, 433 Pa. 328, 249 A.2d 549 (1969), the Pennsylvania Supreme Court, relying on *Mempa* and *Remeriez*, held that a hearing at which the petitioner was recommitted to prison for a technical violation of his parole also required effective assistance of counsel. "The recommitment hearing determined whether or not appellant would be returned to prison. There can be no question that a proceeding at which a determination of that kind was made was a 'critical stage.'" *Tinson*, 433 Pa. at 334, 249 A.2d at 552. In *Coades v. Pennsylvania Board of Probation and Parole*, 84 Pa.Cmwlth. 484, 480 A.2d 1298 (1984), this Court succinctly discussed the right of an indigent to counsel in parole revocation hearings as developed in case law subsequent to *Tinson:*

> In 1972 our Supreme Court reaffirmed its holding in *Tinson* in its decision in *Commonwealth ex rel. Rambeau v. Rundle* [, 455 Pa. 8, 314 A.2d 842 (1973),] and found counsel was crucial in presenting mitigating circumstances, if any were existent, to the Board. 455 Pa. at 18, 314 A.2d at 847. However, prior to our Supreme Court's decision in *Rambeau*, the United States Supreme Court handed down its decision in *Morrissey v. Brewer* [, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972),] in which the Supreme Court specifically held that a parole revocation proceeding is not part of

a criminal prosecution and that parolees are not entitled to the same constitutional guarantees and safeguards as is a criminal accused. 408 U.S. at 480, 92 S.Ct. 2593. The *Rambeau* Court was aware of the *Morrissey* decision but only Justices Pomeroy and Eagen noted that *Morrissey* cast a grave doubt on the continuing validity of resting the parolee's right to counsel on *Mempa v. Rhay*. Justice Pomeroy, in his concurring opinion, noted that the *Tinson* holding giving parolees an absolute right to counsel was not required as a matter of federal constitutional law. 455 Pa. at 24, 314 A.2d at 850 (Pomeroy, J., concurring). Justice Eagen, however, strongly disagreed with the Court's holding that counsel was required at all revocation hearings and read the Supreme Court's holding in Morrissey as holding counsel is not always constitutionally required at revocation hearings where the only violation of parole is a new criminal conviction. *See [Rundle,]* 455 Pa. at 26–28, 314 A.2d at 851–52 (Eagen, J., concurring and dissenting).

Shortly after our Supreme Court decided *Rambeau*, the United States Supreme Court handed down its decision in *Gagnon v. Scarpelli* [, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973),] where the Supreme Court addressed the precise issue concerning the right to counsel as was before the *Rambeau* Court. In *Gagnon* the Supreme Court expressly rejected the idea that a parolee has an absolute constitutional right to counsel representation at a parole revocation hearing. Justice Powell, writing for the Court, recognized that there existed situations where the presence of counsel at parole revocation hearings would be both undesirable and unnecessary. The only occasions whereby the right to counsel at parole revocation

hearings is of federal constitutional magnitude is where fundamental fairness under the due process clause of the Fourteenth Amendment requires counsel. 411 U.S. at 790, 93 S.Ct. 1756. In cases such as petitioner's where the only violation of parole charged is a new criminal conviction, the *Gagnon* Court held counsel is constitutionally required only where there is *substantial* justification or mitigation which would render revocation inappropriate and where the justification and mitigation is *complex or otherwise difficult to develop or present. Id.* at 790–91, 93 S.Ct. 1756 (Emphasis added).

*Coades,* 480 A.2d at 1302–03 (footnote omitted). This Court, in *Coades,* also determined that "the due process guarantees under [the Pennsylvania] constitution are no greater than those afforded by the Federal Constitution." *Id.* at 1305. This Court held that the right of a parolee to counsel is statutory, found in Section 6(a) of the Act commonly known as the Public Defender Act,[1] which states, in relevant part:

> (a) The public defender shall be responsible for furnishing legal counsel, in the following types of cases, to any person who, for lack of sufficient funds, is unable to obtain legal counsel:
>
> . . . .
>
> (10) Probation and parole proceedings and revocation thereof.

16 P.S. § 9960.6(a)(10); *Coades,* 480 A.2d at 1305. The United States Supreme Court, in *Gagnon,* stated regarding the right of parolees to counsel:

> It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Gagnon,* 411 U.S. at 790, 93 S.Ct. 1756. Notably, the cases discussed above dealt with revocation of parole, not the recalculation of a maximum date by a parole board subsequent to a parole revocation.

In *Commonwealth v. Turner,* 518 Pa. 491, 544 A.2d 927 (1988), the Pennsylvania Supreme Court adopted a less stringent standard for the withdrawal of appointed counsel from cases in which the right to counsel does not derive from the United States Constitution, such as collateral appeals. The Court held that, rather than an *Anders* brief, counsel may instead provide a "no-merit" letter[2] which details "the na-

---

**1.** Act of December 2, 1968, P.L. 1144, *as amended,* 16 P.S. § 9960.6(a)(10).

**2.** Such letters are referred to by various names by courts of this Commonwealth. *See, e.g., Commonwealth v. Porter,* 556 Pa. 301, 309 & n. 2, 728 A.2d 890, 893 & n. 2 (1999)

(referring to such a letter as a " 'no merit' letter" and noting that such a letter is also commonly referred to as a *"Finley* letter," referring to the Superior Court case *Commonwealth v. Finley,* 330 Pa.Super. 313, 479 A.2d 568 (1984)); *Zerby v. Shanon,* 964 A.2d 956,

ture and extent of [the attorney's] review and list[s] each issue the petitioner wished to have raised, with counsel's explanation of why those issues are meritless," at which point the court must conduct its own review of whether the claim is meritless. *Id.* at 494–95, 544 A.2d at 928. This Court first applied *Turner* in *Epps v. Pennsylvania Board of Probation and Parole,* 129 Pa.Cmwlth. 240, 565 A.2d 214 (1989), which dealt with an appeal from a recommitment order. *Epps* recognized that counsel seeking to withdraw could file either an *Anders* brief or a no-merit letter. *Epps,* 565 A.2d at 216. Unlike the no-merit letter described in *Turner,* rather than explaining why the petitioner's issues are meritless, *Epps* stated that such a letter should explain how the petitioner's appeal is "frivolous." *Id.* Later, however, in *Frankhouser,* 143 Pa.Cmwlth. 80, 598 A.2d 607 (1991), in which the petitioner challenged the Board's calculation of what credit he was to receive against his backtime, this Court clarified that a no-merit letter need only "allege that the parolee's appeal is *without merit,*" in accord with the requirements of *Turner. Frankhouser,* 598 A.2d at 608 (emphasis added).

Since *Frankhouser,* there have been only small refinements to this Court's standard for when counsel may withdraw from representation in probation/parole hearings. In *Wesley v. Pennsylvania Board of Probation and Parole,* 150 Pa. Cmwlth. 54, 614 A.2d 355, 356 (1992), this Court held that counsel seeking to withdraw must comply with the technical requirements of *Turner* or *Craig* before this Court will independently assess the merits of the case. In *Hill v. Pennsylvania*

Board of Probation and Parole, 707 A.2d 1214, 1215–16 (Pa.Cmwlth.1998), this Court held that a no-merit letter must substantively address each of the petitioner's arguments, rather than baldly stating that the claims are without merit.

In recent years, this Court has shown little concern for whether it receives an *Anders* brief or a no-merit letter in a parole revocation matter. *See, e.g., Reavis v. Pennsylvania Board of Probation and Parole,* 909 A.2d 28, 33 (Pa.Cmwlth.2006) (stating that counsel seeking to withdraw may proceed under *Craig* or *Turner* ). This Court has recently drawn little distinction between whether the case must be "frivolous" or "meritless" before counsel may withdraw.[3]

In *Zerby v. Shanon,* 964 A.2d 956 (Pa. Cmwlth.2009), a parole recalculation case, this Court discussed (consistent with Superior Court jurisprudence) that, per *Epps* and *Frankhouser,* all that is required of counsel seeking to withdraw from representation in an appeal of a determination of the Board is a no-merit letter showing that the case is without merit. In *Zerby,* however, this Court was not presented with the issue and, so, there was no discussion of how counsel should proceed where there is a constitutional right to counsel in parole cases.

■ In a case where there is a constitutional right to counsel, counsel seeking to withdraw from representation of a petitioner in an appeal of a determination of the Board should file an *Anders* brief. This arises where the petitioner raises a:

960 (Pa.Cmwlth.2009) ("Turner letter"); *Commonwealth v. Blackwell,* 936 A.2d 497, 499 (Pa.Super.Ct.2007) (*"Turner/Finley* letter"). In this opinion, we shall refer to such letters as no-merit letters.

3. While the Court often describes the standard as whether the case is frivolous, we have not been able to locate any case in which this Court has denied permission to withdraw on the basis that a petitioner's case, although meritless, is not frivolous.

colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Gagnon*, 411 U.S. at 790, 93 S.Ct. 1756. Such claims would only arise in appeals from determinations revoking parole. In an appeal from a revocation decision, this Court will apply the test from *Gagnon*, quoted above, and, unless that test is met, we will only *require* a no-merit letter.[4]

▆▆▆ In the case at bar, Counsel filed a no-merit letter. Hughes, in his Petition to this Court, alleged that the hearing recommitting him as a convicted parole violator was not timely held and that the Board did not correctly calculate his maximum date. This Court subsequently limited the issues in this case as requested by the Board to the timeliness of Hughes' request for administrative review of the Board's revocation decision and to whether the request for review of the recalculation order was rendered moot by the Board's subsequent decision.[5] These are not issues that are complex or difficult to develop; therefore, only a no-merit letter should be required of Counsel.

▆▆▆ As discussed above, under the *Turner* standard, Counsel's letter must detail "the nature and extent of [Counsel's] review and list[ ] each issue the petitioner wished to have raised, with counsel's explanation of why those issues are meritless." *Turner*, 518 Pa. at 494–95, 544 A.2d at 928. Here, Counsel's No–Merit Letter sets out the procedural history of the case, reflecting Counsel's review of the record in this matter. While Counsel's No–Merit Letter does not discuss each of the issues raised in the Petition for Review (which Counsel drafted), it does explain that this Court, by order, limited the issue in this case to the timeliness of Hughes' request for administrative relief. In his No–Merit Letter, Counsel explains that Hughes' challenge to his recommitment as a convicted parole violator is untimely because the Board's decision on this issue was issued December 17, 2002, and Hughes' Request for Administrative Relief was not mailed until February 28, 2008, more than five years later. In support, Counsel cites *Wright v. Pennsylvania Board of Probation and Parole*, 743 A.2d 1004 (Pa. Cmwlth.1999), and *Woodard v. Pennsylvania Board of Probation and Parole*, 136 Pa.Cmwlth. 257, 582 A.2d 1144 (1990). *Wright* and *Woodard* stand for the proposition that a recommitment order and a recalculation order are separate appealable orders. *Wright*, 743 A.2d at 1006; *Woodard*, 582 A.2d at 1146. *Woodard* specifically held that a petitioner could not chal-

---

**4.** As in the past, we will not deny an application to withdraw simply because an attorney has filed an *Anders* brief where a no-merit letter would suffice. In cases where there is no constitutional right to counsel, however, we shall still apply the standard of whether the petitioner's claims are without merit, rather than whether they are frivolous.

**5.** As noted above, this Court, by order dated July 28, 2008, granted the Board's Motion to Limit. In doing so, this Court stated "[t]he issue in this matter is limited to the timeliness

of petitioner's administrative appeal." *Hughes v. Pennsylvania Board of Probation and Parole*, (No. 1075 C.D.2008, filed July 28, 2008). Apparently inadvertently, the mootness issue was not explicitly included. However, we read this Court's order granting the Motion to Limit as giving the Board only what it asked for in its motion: limitation of the issues to the timeliness of the challenge to Hughes' revocation *and* mootness of the challenge to the recalculation of Hughes' maximum date.

lenge a recommitment order, through a challenge of a subsequent recalculation order, where an appeal of the recommitment order would have been untimely. *Id.* at 1146–47. Therefore, Counsel's No–Merit Letter does provide substantial reasons why Hughes' challenges to his recommitment as a convicted parole violator are without merit. However, because Counsel's no-merit letter does not sufficiently address *all* the issues raised in Hughes' Petition, as we discuss below, we may not conduct an independent review of the merits of this issue. *See Wesley,* 614 A.2d at 356 (this Court "does not reach an examination of the merits of the appeal until it is satisfied that counsel has discharged its responsibility in complying with the technical requirements of an *Anders* brief or a no-merit letter"). We, therefore, reach no conclusion as to the ultimate merits of the issue of the timeliness of Hughes' challenge of his recommitment order.

Regarding the mootness issue, Counsel's No–Merit Letter is inadequate as it does not provide "substantial reasons for concluding that" or authority for the proposition that Hughes' complaints regarding the January 31, 2008 recalculation order were rendered moot by a subsequent order extending his maximum date by three months. *Jefferson v. Pennsylvania Board of Probation and Parole,* 705 A.2d 513, 514 (Pa.Cmwlth.1998). It is true that subsequent to Hughes' Request for Administrative Review of the January 31, 2008 recalculation order, the Board issued a second recalculation order. However, the second order added approximately three months to Hughes' maximum date. In addition, the Board did not cite, either in its May 13, 2008 denial of Hughes' administrative appeal or in its Motion to Limit, any authority to support its argument that the January 31, 2008 order was rendered moot by the April 14, 2008 order. Similarly, Counsel, although he addressed the moot-

ness issue in his No–Merit Letter, has not pointed to any such authority. And, indeed, the Board's decision in this regard is troubling in that it appears to have defeated a request for administrative review by issuing a subsequent, less favorable recalculation decision, which Hughes may not have realized required him to file another appeal. This is certainly an issue that merits attention by Counsel. We, therefore, deny Counsel's Application, with leave to file an amended application for leave to file an amended application for leave to withdrawal and no-merit letter within 30 days, or, alternatively, a brief in support of Hughes' Petition.

### *ORDER*

**NOW,** June 9, 2009, the Application for Leave to Withdraw as Counsel filed by Kent D. Watkins (Counsel) in the above-captioned matter is hereby **DENIED** with leave to file an amended application for leave to withdraw as Counsel with an amended no-merit letter within 30 days; if Counsel chooses not to file such an application, he shall file a Petitioner's Brief within 30 days of this order.

DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent to the majority's conclusion that Counsel failed to provide substantial reasons for concluding that the January 31, 2008, recalculation order was rendered moot by a subsequent order which extended Hughes's maximum date by three months. Counsel stated in his letter, "Additionally, although the appeal to the recalculated maximum sentence was timely, the subsequent decision mailed April 14, 2008, presented a new calculation. Therefore, his February 28, 2008, administrative appeal was dismissed as moot. Petitioner [Hughes] never appealed the April 14, 2008, recalculation order." Letter

from Kent D. Watkins, October 6, 2008, at 4. Once the new calculation of the maximum date was announced by the Board, this new calculation rendered Hughes's challenge to the January 31, 2008, recalculation order moot. Counsel was terse in his explanation but he did set forth the reason the request for administrative relief was moot. I would grant the petition to withdraw and affirm on the merits.

President Judge LEADBETTER and Judge LEAVITT join in this dissent.