IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Maurice O. White,<br>            Petitioner<br><br>            v.<br><br>Pennsylvania Parole Board,<br>            Respondent | :<br>:<br>:    No.  830 C.D. 2020<br>:<br>:    Submitted:  April 9, 2021<br>:<br>:<br>: |


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE McCULLOUGH                          FILED: June 3, 2022


        Jessica A. Fiscus, Esquire (Counsel), of the Erie County Public
Defender's Office, petitions the Court for leave to withdraw as counsel on behalf of
Maurice O. White (White).  Through Counsel, White petitions for review of the order
of the Pennsylvania Parole Board (Board), mailed July 17, 2020, which determined
that the Board relied upon admissible evidence when properly recommitting White as
a convicted parole violator (CPV), and that White's recalculated maximum parole date
of October 4, 2029, included all applicable credits.  Upon review, we grant Counsel's
application for leave to withdraw appearance and affirm the Board's order.

## I.    Background

        From 2006 to 2007, White pleaded guilty and was sentenced on 14
separate charges.  (Certified Record (C.R.) at 1-2.)  In total, White was sentenced to 8
to 22 years' imprisonment.  *Id.*

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn
Jubelirer became President Judge.

On August 6, 2007, White pleaded guilty to 11 charges.  (C.R. at 1-2.)[2] On September 19, 2007, White was sentenced to an aggregate term of one month to five years' imprisonment for three probation violations to be served concurrently to all other sentences.  *Id.*  In sum, White was sentenced to 8 to 22 years' imprisonment with a minimum sentence date of February 3, 2014, and a maximum sentence date of February 3, 2028.  (C.R. at 2, 6.)

White was paroled by Board decision recorded April 10, 2018, and he was released on May 10, 2018.  (C.R. at 15.)  The conditions governing White's parole, which he endorsed with his signature on May 9, 2018, specifically advised White that he must refrain from owning or possessing any firearms or weapons.  (C.R. at 16.)

On December 14, 2018, the Steelton Police executed a criminal complaint and affidavit of probable cause against White, charging White with persons not to possess firearms and firearms not to be carried.  18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1).

---

[2] First, White pleaded guilty to robbery and was sentenced to 5 to 10 years' imprisonment. 18 Pa.C.S. § 3701(a).  (C.R. at 1.)  Next, White was sentenced to an aggregate sentence of one to two years' imprisonment following his guilty plea to two counts of reckless endangerment and one count of escape from detention to be served concurrently with his robbery sentence.  18 Pa.C.S. §§ 2705, 5121(a).  (C.R. at 1.)  White was sentenced to an aggregate sentence of two to ten years' imprisonment, following White's guilty plea to aggravated assault and reckless endangerment.  18 Pa.C.S. §§ 2702(a), 2705.  (C.R. at 1.)  White received an additional aggregate sentence of 2 to 7 years' imprisonment after White pleaded guilty to receiving stolen property, persons not to possess firearms, and firearms not to be carried without a license.  18 Pa.C.S. §§ 3925(a), 6105(a)(1), 6106, respectively. (C.R. at 1-2.)  White's robbery, two counts of reckless endangerment, and escape from detention sentences were ordered to be served concurrently with each other, but consecutively to the aggregate sentences of aggravated assault, reckless endangerment, receiving stolen property, persons not to possess firearms, and firearms not to be carried without a license. (C.R. at 2.)  White's charges for aggravated assault, reckless endangerment, and receiving stolen property were ordered to be served concurrently, but consecutively to the aggregate sentence of robbery, two counts of reckless endangerment, and one count of escape from detention.  *Id.*
    Lastly, White was sentenced to one to two years' imprisonment for receiving stolen property. 18 Pa.C.S. § 3925(a).  (C.R. at 2-3.)  White was sentenced to one to two years' imprisonment after pleading guilty to reckless endangerment.  § 2705.  *Id.*  These sentences were ordered to be served concurrently with each other and consecutively with the robbery, two counts reckless endangerment, and escape of detention sentence.  *Id.*  Additionally, these sentences were to be served consecutively to the aggregate sentences of aggravated assault and reckless endangerment, receiving stolen property, persons not to possess firearms, and firearms not to be carried without a license.  *Id.*

(C.R. at 21, 27.)  White did not post bail.  (C.R. at 26.)  After White's arrest, the Board issued a warrant to commit and detain him.  (C.R. at 25.)  On December 20, 2018, the Swatara Police executed a criminal complaint and affidavit of probable cause charging White with one count of persons not to possess a firearm.  (C.R. at 32.)  White did not post bail on this charge. (C.R. at 41.)

The Board issued a Notice of Charges and Hearing on December 20, 2018, which informed White of the technical parole violation of possession of a firearm and the pending criminal charges.  (C.R. at 32-34.)  White admitted to possessing a firearm and waived representation of counsel, a detention hearing, and a violation hearing. (C.R. at 35-36.)

On December 28, 2018, the hearing examiner executed a report, recommending that White be placed in a state correctional institution (SCI) or contract county jail (CCJ), due to his pending criminal charges from both the Steelton and the Swatara Police, and determining that the technical violation was not supported by a preponderance of the evidence, therefore the hearing examiner recommended White continue with parole.  (C.R. at 47-59; 58.)  The hearing examiner also recommended White remain detained pending the disposition of his criminal charges.  (C.R. at 51.) A second Board member signed the report on December 28, 2018.  (C.R. at 59.)

Correspondingly, the Board issued a decision on January 11, 2019, concluding that the evidence did not support the finding that White violated the terms and conditions of parole to support the technical parole violation.  (C.R. at 60.)  Despite determining White should remain detained pending his criminal charges, the Board included additional conditions of parole in its decision.  (C.R. at 60-61.)  On January 16, 2019, the Board issued a supplemental decision confirming that White would not be released until the disposition of his criminal charges.  (C.R. at 62.)

On March 13, 2019, the charges for possession of a firearm and firearms not to be carried without a license from the Steelton Police were dismissed.  (C.R. at

81; 84-85.) On October 15, 2019, White pleaded guilty to his remaining charge of persons not to possess a firearm. (C.R. at 63.) White was sentenced to 12 to 24 months' imprisonment with 9 months and 24 days credit for time served from December 21, 2018, to October 15, 2019. (C.R. at 63; 66-69.)

On December 2, 2019, the Board issued a Notice of Charges and Hearing, scheduling a revocation hearing for December 20, 2019, at which White appeared represented by counsel. (C.R. at 91, 93.) At the revocation hearing, Parole Agent Tien Ho (Parole Agent) testified about White's new conviction and sentence. (C.R. at 95; 99-101.) The Board offered into evidence a certified sentencing document and Unified Judicial System (UJS) criminal dockets, which were admitted without objection. (C.R. at 100-101.) During the hearing, White asserted he should receive credit from December 14, 2018, to December 20, 2018, at which time White was detained on both the Board's detainer and the Steelton Police charges. (C.R. at 102.) White raised an additional credit issue regarding the time he was detained by the Board. (C.R. at 103-104.) At this point, the hearing examiner instructed White that the revocation hearing was not the appropriate venue to address his credit issue; however, White could raise the issue in more detail once he received an official Board action. (C.R. at 102-105.)

Following the hearing, the hearing examiner executed a report and recommended White be recommitted to an SCI or CCJ as a CPV for 24 months, when available, due to White's new criminal conviction. (C.R. at 114.) Also, the hearing examiner recommended White receive no credit for time spent at liberty on parole as White was convicted of a firearm offense while on parole for violent and firearm-related crimes. (C.R. at 111-112.) A second Board Member signed the report on January 16, 2020.

On January 22, 2020, the Board issued an order to recommit White as a CPV. (C.R. at 118.) The Board determined White's original parole date was May 10, 2018, with 3,556 days remaining on his original sentence resulting in a maximum

4

parole date of February 3, 2028. *Id.* The Board awarded White seven days of credit for the period of December 14, 2018, to December 21, 2018, when he was held solely on the Board's detainer. *Id.* With the seven-day credit, the Board concluded White owed 3,549 days of backtime. *Id.* White was returned to custody on January 16, 2020, and adding the 3,549 days of backtime to that date, the Board determined White's new maximum sentence date was October 4, 2029. *Id.*

On January 22, 2020, the Board issued a notice with a mailing date of January 28, 2020, which recommitted White as a CPV to serve 24 months' incarceration on his original sentence. (C.R. at 121.) In its discretion, the Board did not award White credit for time spent at liberty on parole as he committed a new offense involving a firearm and was on parole for violent and firearm-related crimes. (C.R. at 122.) The Board noted the reasons for its decision as White's recent conviction, his poor adjustment under supervision, and that he is considered a threat to the community. (C.R. at 121.) The Board determined that White was not eligible for reparole until January 9, 2022, and recalculated his maximum parole date to be October 4, 2029. *Id.* On February 12, 2020, the Board issued a modified order to recommit, including all the charges White was recommitted on, which are the subject of his original and new sentence.[3] (C.R. at 124-125.)

Subsequently, White filed, *pro se*, an administrative remedies form asserting that he was owed credit for time served from October 15, 2019, to January 22, 2022, due to the illegal traffic stop, search, and arrest. (C.R. at 126.) Further, White alleged the hearing examiner relied on hearsay evidence during the revocation hearing. *Id.* This form was postmarked February 20, 2020, and was received by the Board on March 5, 2020. (C.R. at 126-127.)

---

[3] There is no mailing date on the modified order. The Board included in the modified order the following six additional charges: CP 06000748CT1-3, CP 060000728CT1, CP 060001413CT1, CP 060000748CT1-3, CP 060000728CT1, and CP 060001047CT1.

Also on February 20, 2020, White mailed a more comprehensive petition for administrative appeal to the Board, which was received on February 25, 2020. (C.R. at 129-132.) In this petition, White alleged that his due process rights were violated when he was incarcerated in Dauphin County Jail as opposed to SCI-Camp Hill. (C.R. at 128-129.) White argued he was entitled to credit for time served on December 14, 2018, when he was held solely on the Board's warrant due to technical violations of parole. (C.R. at 129.) Further, White asserted the Board erred by failing to credit him for time served from October 15, 2019, to January 22, 2022, during which time White asserted he was confined solely on the Board's detainer. *Id.* White alleged the Board failed to credit him 97 days towards his original sentence. *Id.* Additionally, White contended the Board erred when the "court documents" were used during the December 20, 2019 revocation hearing to establish his conviction as the documents were inadmissible hearsay without the testimony of the Clerk of Courts. (C.R. at 130.) White asserted the Board erred as a matter of law when it cited to Parole Agent's testimony as it was irrelevant hearsay and Parole Agent "never testified or provided testimony against petitioner." *Id.* White alleged he was owed 9 months and 24 days credit. *Id.* White requested the Board readjust his reparole eligibility date, grant credit from December 14, 2018, to January 22, 2022, and credit his original sentence for time served from October 15, 2019, to January 22, 2022. *Id.*

In its response mailed July 17, 2020, the Board affirmed its decision mailed January 28, 2020. (C.R. at 137.) The Board categorized White's requests for administrative remedies into two issues: 1) White objected to the Board's decision to recommit him as a CPV; and 2) a credit allocation issue in the recalculated maximum sentence date. (C.R. at 136.) First, the Board explained that there was sufficient evidence presented at the December 20, 2019 revocation hearing to revoke parole, including a certified copy of the court record reflecting White's conviction,

6

documented Board forms, a documented UJS portal form, and Parole Agent's testimony. *Id.*

Next, the Board addressed how it recalculated White's maximum sentence date. *Id.* The Board explained White was paroled May 10, 2018, with a maximum sentence date of February 3, 2028, leaving 3,556 days remaining on the sentence at the time of parole.[4] *Id.* The Board awarded no credit for time spent at liberty on parole because White was recommitted as a CPV. *Id.* The Board granted White credit for seven days of presentence incarceration from December 14, 2018, to December 21, 2018. *Id.* Pursuant to *Gaito v. Pennsylvania Board of Probation & Parole*, 412 A.2d 568 (Pa. 1980), the Board explained White is not entitled to credit on his original sentence for time served after December 21, 2018, because at that time he was held on both the Board's detainer and his new criminal charges. *Id.* However, from December 14, 2018, to December 21, 2018, White was held solely on the Board's detainer and received a 7-day credit on his original sentence, which brought the remaining days on his original sentence to 3,549 days. *Id.*

The Board noted that under section 6138(a)(5) of the Prisons and Parole Code, 61 Pa.C.S. § 6138(a)(5), "a CPV who was released from an SCI and receives a new sentence to be served in an SCI must serve the original sentence first." (C.R. at 137.) Under *Campbell v. Pennsylvania Board of Probation & Parole*, 409 A.2d 980 (Pa. 1980), the Board stated that section 6138(a)(5) does not apply until the Board has

---

[4] In its response to the administrative remedies form mailed on July 17, 2020, the Board incorrectly stated that White was originally paroled on March 10, 2018, with a maximum parole date of February 3, 2028; however, it is apparent to the Court that this was a typographical error as the order to recommit indicates White's correct parole date was May 10, 2018, with a maximum parole date of February 3, 2028. (C.R. at 123.) Moreover, the new maximum parole date of October 4, 2029, was calculated utilizing White's original parole date of May 10, 2018, and his return to custody date of January 16, 2020. (C.R. at 15, 123, and 136.) Nevertheless, we note that the order to recommit had the correct parole date of May 10, 2018 and new maximum sentence date of October 4, 2029. (C.R. at 123.)

revoked the reentrant. *Id.* The Board determined White became available to serve his original sentence on January 16, 2019, because that was the day the Board voted to recommit him as a CPV. *Id.* The Board explained that by "[a]dding 3,549 days to that availability date yields a recalculated [maximum] date of October 4, 2029." *Id.* Moreover, the Board noted that any time spent incarcerated that was not credited towards the original sentence would be credited towards White's new state sentence. *Id.*

Thereafter, White, with the assistance of Counsel, filed a petition for review with this Court.

**II.    Counsel's Application for Leave to Withdraw Appearance**

After filing the petition for review, Counsel filed an application to withdraw as counsel and an *Anders*[5] brief, detailing the reasons why she determined White's appeal lacked merit. Therefore, before we examine the merits of White's petition for review, we must first address Counsel's application to withdraw as counsel. *Seilhamer v. Pennsylvania Board of Probation & Parole*, 996 A.2d 40, 42-44 (Pa. Cmwlth. 2010).

To withdraw, Counsel must fulfill the procedural requirements set forth in *Craig v. Pennsylvania Board of Probation & Parole*, 502 A.2d 758 (Pa. Cmwlth. 1985). Pursuant to *Craig*, Counsel must notify the inmate of her request to withdraw, furnish the inmate with a no-merit letter satisfying the requirements of *Commonwealth v. Turner*, 544 A.2d 927, 928 (Pa. Cmwlth. 1988) or a copy of an *Anders* brief, and inform the inmate of his right to retain new counsel or submit a brief on his own behalf. *Craig*, 502 A.2d at 760-61; *Seilhamer*, 996 A.2d at 42-43. "Where an *Anders* brief is filed when a no-merit letter would suffice, the *Anders* brief must at least contain the same information that is required to be included in a no-merit letter." *Seilhamer*, 996

---

[5] *Anders v. California*, 386 U.S. 738 (1967).

A.2d at 42-43. A no-merit letter must include an explanation of the nature and extent of counsel's review, and list each issue the petitioner wished to have raised, with an explanation of why those issues are meritless. *Banks v. Pennsylvania Board of Probation & Parole*, 827 A.2d 1245, 1248 (Pa. Cmwlth. 2003). Once counsel fully complies with the procedural and substantive requirements to withdraw, this Court will then independently review the merits of the petitioner's claims. *Zerby v. Shanon*, 964 A.2d 956, 962 (Pa. Cmwlth. 2009). If the Court agrees with counsel, we will permit her to withdraw. *Id.* at 960.

An *Anders* brief is required where an inmate has a constitutional right to counsel and withdrawal is allowed where the appeal is wholly frivolous. *Hughes v. Pennsylvania Board of Probation & Parole*, 977 A.2d 19, 22-26 (Pa. Cmwlth. 2009) (en banc). If there is not a constitutional right to counsel, a no-merit letter will satisfy counsel's obligations, which addresses the standard of whether the claims on appeal are without merit. *Seilhamer*, 996 A.2d at 42 n.4. Here, White does not have a constitutional right to counsel, and therefore, we apply the lack-of-merit standard.[6]

---

[6] A constitutional right to counsel exists in a parole revocation matter where a parolee raises a colorable claim

> (1) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (2) that even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Hughes*, 977 A.2d at 25-26 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778 (1973)). Here, although White alleged violations of his due process rights, he is only seeking review of issues related to his recommitment as a CPV and the recalculation of his maximum date. Therefore, White has no constitutional right to counsel.

By a letter dated December 17, 2020, Counsel notified White of her intention to withdraw as counsel and advised him of his right to retain private counsel and to raise any additional points with the Court that he deems worthy of the Court's attention. Counsel attached to this letter a copy of the application to withdraw and the supporting *Anders* brief. The docket contains a certificate of service indicating that the application, *Anders* brief, and letter were served upon White. Thus, Counsel has satisfied her duty pursuant to *Craig*. Moreover, in the *Anders* brief, Counsel sets forth the nature and extent of her review of the case. Counsel summarizes the procedural history and relevant facts. The *Anders* brief addresses the same issues that were raised in the petition for review. She raises two arguments on behalf of White and explains her determination that the appeal of the Board's order is frivolous and without merit on each count, with citations to relevant caselaw and statutes. Therefore, Counsel has satisfied her duties pursuant to *Turner*.

## III. Review of the Merits

Having determined Counsel has complied with the procedural requirements, we now conduct our own independent review to determine whether White's appeal is, in fact, without merit. An appeal is without merit when it lacks any basis in law or fact. *Commonwealth v. Santiago*, 978 A.2d 349, 356 (Pa. 2009). On appeal,[7] White contends that the Board lacked sufficient evidence to revoke his parole and recommit him as a CPV as the Board's hearing examiner relied on inadmissible hearsay court documents and testimony. Additionally, White contends that the Board improperly calculated his custody return date and backtime credit. (Petition for Review ¶ 6; C.R. at 126.)

---

[7] Our scope of review is limited to determining whether constitutional rights were violated, whether the decision was in accordance with law, or whether the necessary findings of fact were supported by substantial evidence. *Shaw v. Pennsylvania Board of Probation & Parole*, 812 A.2d 769, 772 n.4 (Pa. Cmwlth. 2002).

10

As Counsel noted, substantial evidence is "relevant evidence [] a reasonable mind might accept as adequate to support a conclusion." *Chapman v. Pennsylvania Board of Probation & Parole*, 484 A.2d 413, 416 (Pa. Cmwlth. 1984). Substantial evidence is more than a mere scintilla. *Id.* It is well-settled that copies of court documents and other public records need not be separately certified to be admissible into evidence. *Anderson v. Pennsylvania Board of Probation & Parole*, 497 A.2d 947 (Pa. Cmwlth. 1984). Moreover, the Board is permitted to rely upon a certified copy of an inmate or parolee's conviction and photocopies of criminal court docket sheets. *Sanchez v. Pennsylvania Board of Probation & Parole*, 616 A.2d 1097, 1101 (Pa. Cmwlth. 1992). Importantly, under 37 Pa. Code § 71.5(b),[8] the Board is permitted to use documentary evidence, if it is satisfied that the evidence is authentic, relevant, and accurate. *See Davis v. Pennsylvania Board of Probation & Parole*, 481 A.2d 714 (Pa. Cmwlth. 1984) (rejecting petitioner's argument that photocopies of court records are inadmissible hearsay as the Board was satisfied with their authenticity, relevance, and accuracy).

In response to White's administrative remedies form, the Board cited to the certified sentencing document, UJS criminal docket, and Parole Agent's testimony as sufficient evidence to support White's parole revocation. (C.R. at 136.) During the revocation hearing, Parole Agent testified that White pleaded guilty to possession of a

---

[8]The regulation states:

> In hearings conducted under this chapter, documentary evidence and reports, including, but not limited to, depositions, written interrogatories, affidavits, laboratory reports, business records, public records, official records and letters of rogatory, may be utilized solely, if the panel or examiner is satisfied as to their authenticity, relevancy, accuracy, and reliability.

37 Pa. Code §71.5(b).

firearm and received a sentence of one to two years' imprisonment. (C.R. at 99-100.) Parole Agent offered into evidence the certified sentencing document and UJS criminal docket, which confirmed Parole Agent's testimony of White's conviction and sentence. *Id.* The certified sentencing document included White's guilty plea, the judge's signature, and White's sentencing credit for time served, and was certified by the Clerk of Courts as a "true copy." (C.R. at 63.) The UJS criminal docket also included White's guilty plea, conviction, and sentence. (C.R. at 72-73.)

Therefore, we conclude White's argument is without merit as the certified sentencing document and UJS criminal docket are substantial evidence to support the Board's decision to revoke parole and recommit White as a CPV. Further, the certified sentencing document and UJS criminal docket were admitted into evidence without objection. Thus, we conclude that White's argument as to the inadmissibility of the certified sentencing document and UJS criminal docket is without merit, and therefore, the Board relied upon sufficient evidence to revoke White's parole.

Next, White asserts that the Board erred in calculating his maximum sentence date by improperly determining his return to custody date and incorrectly calculating his backtime credit. (Petition for Review ¶ 7-8; C.R. at 126.) White alleged he was not granted several periods of credit to his original sentence. (C.R. at 126.) White asserted he is entitled to credit from October 15, 2019, to January 22, 2022, for a total of 830 days. *Id.* Additionally, White contended he was held solely by the state parole agents on December 14, 2018, as the charges by the Steelton Police were eventually dismissed. (C.R. at 128-129.) Further, White alleged that the Board incorrectly recalculated his eligibility for review due to the improper credits. (C.R. at 126.) Here, the Board determined White was entitled to seven days' credit from December 14, 2018, to December 21, 2018, at which point he was held solely on the Board's detainer.

Under *Gaito*, if a CPV satisfies bail requirements prior to sentencing and is incarcerated solely on the Board's detainer, this period of incarceration is credited to his original sentence. 412 A.2d at 571. However, when bail is not posted, the time incarcerated on both the new criminal charges and the Board's detainer must apply to the new sentence. *Id.* Here, White had 3,556 days left on his sentence when he was released on parole. After his arrest on December 14, 2018, White was confined on both the Board's warrant and the Steelton Police charges until December 21, 2018, at which point he was also charged by the Swatara Police. Notably, the Steelton Police charges were dismissed, and thus, White was entitled to and did in fact receive credit for the seven days he was incarcerated solely on the Board's warrant from December 14, 2018, to December 21, 2018.

From December 21, 2018, to October 19, 2019, White was held on both the Board's warrant and his new charges because he did not post bail. White received credit on his new sentence for the time he spent incarcerated from December 21, 2018, to October 19, 2019, totaling 9 months and 24 days of credit. On January 16, 2020, the Board voted to recommit White as a CPV, and this is the date he became available to serve his unexpired term. White had 3,549 days remaining on his original sentence, which was added to White's custody for return date of January 16, 2020, and properly resulted in a new parole maximum date of October 9, 2029. Therefore, we conclude the Board's calculation is correct and White's appeal is without merit.

Lastly, the Court must address White's petition for review, wherein Counsel incorporates by reference any other issues argued by White in his two requests for administrative relief "or issues that first became apparent upon receipt of the Order of Respondent." (Petition for Review ¶ 9). It is well-settled that "incorporation by reference" is an "unacceptable manner of appellate advocacy for the proper presentation of a claim for relief and that such practice will result in waiver." *Commonwealth v. Briggs*, 12 A.3d 291, 342-43 (Pa. 2011); *Jones v. School District of*

*Philadelphia*, 206 A.3d 1238, 1250 (Pa. Cmwlth. 2019). We decline to consider the arguments not explicitly raised in the petition for review with this Court.

Accordingly, based on the foregoing, we grant Counsel's application for leave to withdraw appearance, and we affirm the Board's order mailed July 17, 2020.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maurice O. White,                          :
               Petitioner          :
                               :   No.  830 C.D. 2020
          v.                             :
                               :
Pennsylvania Parole Board,                 :
               Respondent          :

## ***ORDER***

AND NOW, this 3rd day of June, 2022, the Application for leave to withdraw as Counsel filed by Jessica Fiscus, Esquire, of the Erie County Public Defender's Office, is GRANTED, and the order of the Pennsylvania Parole Board, mailed on July 17, 2020, is AFFIRMED.

                                      _____

                                      PATRICIA A. McCULLOUGH, Judge